**Reversed and Remanded and Opinion filed March 5, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00113-CV

---

**LDF CONSTRUCTION, INC., Appellant**

**V.**

**TEXAS FRIENDS OF CHABAD LUBAVITCH, INC. D/B/A CHABAD LUBAVITCH CENTER OF HOUSTON, Appellee**

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2013-33832**

---

## O P I N I O N

Appellant, LDF Construction, Inc. ("LDF"), appeals an order denying LDF's motion to compel arbitration and abate proceedings in a construction-defect suit brought by appellee, Texas Friends of Chabad Lubavitch, Inc. d/b/a Chabad Lubavitch Center of Houston ("Chabad"). We reverse and remand with instructions for the trial court to compel arbitration and abate the suit.

## I. BACKGROUND

Pursuant to a contract executed in 2006, LDF remodeled and performed repairs to Chabad's facility for the price of $3,185,245. Chabad claims that certain aspects of the construction were deficient or otherwise non-compliant with the contract and applicable building codes. In 2013, Chabad sued LDF for breach of contract, breach of warranty, negligence, and negligent representation.

LDF filed a "Motion to Compel Binding Arbitration and Abate Proceedings" under the Texas General Arbitration Act ("the Act"). *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001–.098 (West, Westlaw through 2013 3d C.S.). Chabad filed a response in opposition. After a hearing, the trial court signed an order denying the motion. LDF filed this interlocutory appeal. *See id.* § 171.098(a)(1) (authorizing interlocutory appeal from order denying motion to compel arbitration under the Act).

## II. PRELIMINARY JURISDICTIONAL ISSUE

As a preliminary issue, Chabad presents a cross-point contending we lack jurisdiction over LDF's appeal because its notice of appeal was untimely.

The trial court signed the order denying the motion to compel arbitration on December 11, 2013. LDF did not, within twenty days thereafter, file a notice of appeal as required under the appellate rules. *See* Tex. R. App. P. 26.1(b). However, on January 31, 2014, LDF filed (1) a "Motion to Advance Appellate Timetable," asserting January 16, 2014 was the date it first received notice or acquired actual knowledge that the order had been signed; and (2) a notice of appeal. The trial court granted the motion, thereby ruling the appellate timetable began January 16, 2014 and rendering timely the notice of appeal filed within twenty days thereafter. *See id.*

2

A party affected by an appealable order may obtain an extension of the period for filing an appeal if it did not receive notice by first-class mail from the district clerk, or acquire actual knowledge, of the order within twenty days after it was signed. *See* Tex. R. App. P. 4.2(a)(1); *see also* Tex. R. Civ. P. 306a(3). In that situation, the period begins on the earlier of the date that the party received notice from the clerk or acquired actual knowledge of the signing, but the period may not begin more than ninety days after the order was signed. *See* Tex. R. App. P. 4.2(a)(1). To establish application of this rule, the party must prove in the trial court, on sworn motion and notice, the date it first received notice from the clerk or acquired actual knowledge of the signing, and the trial court must sign an order specifying such date. *See id.* 4.2(b), (c); Tex. R. Civ. P. 306a(5); *see also Pilot Travel Ctrs., LLC v. McCray,* 416 S.W.3d 168, 175–76 (Tex. App.—Dallas 2013, no pet.) (applying this rule to extend time for filing appeal from order denying motion to compel arbitration).

When granting LDF's motion to advance the appellate timetable, the trial court found LDF first received notice or acquired actual knowledge of the order at issue on January 16, 2014. We review that finding for legal and factual sufficiency. *See Tran v. Hong Kong Dev. Corp.*, No. 01-13-00613-CV, 2014 WL 4219470, at *4 (Tex. App.—Houston [1st Dist.] Aug. 26, 2014, pet. denied) (mem. op.). When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). When, as here, a party challenges legal sufficiency relative to an adverse finding on which it did not bear the burden of proof, it must show that no evidence supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). When a party challenges factual sufficiency

relative to an adverse finding on which it did not bear the burden of proof, we consider all the evidence and will set aside the finding only if the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). As the factfinder on a motion to extend the appellate timetable, the trial court weighs the evidence, judges witness credibility, and enjoys "great latitude" to resolve relevant fact issues. *See Tran*, 2014 WL 4219470, at *4.

To support its motion, LDF attached the affidavit of its counsel who averred as follows. The motion to compel arbitration was submitted on September 16, 2013. Thereafter, counsel periodically checked the district clerk's website for a signed order and called the trial court's clerk. On December 11, 2013, the court clerk informed counsel that the court had "reached a decision" and was preparing its own order and counsel would be notified of the ruling by postal mail. Counsel then ceased checking the district clerk's website and calling the court clerk and waited to receive notice by mail. Neither counsel nor anyone else in her law firm, to her knowledge, ever received such notice. On January 16, 2014, Chabad's attorney mentioned the denial of the order in a voice mail to LDF's counsel. On the same day, LDF's counsel retrieved a copy of the order from the district clerk's website and learned it had been signed December 11, 2013. On January 30, 2014, counsel contacted the court clerk and inquired how notice of the order was sent. She received a copy of the Judicial Information Management System ("JIMS") entry showing the notice was mailed to the "18th floor" of her firm's street address when the correct location was the 8th floor. Counsel concluded by averring she first acquired actual knowledge of the signed order on January 16, 2014. LDF

4

attached a copy of the JIMS entry showing the notice was mailed to the incorrect floor.

Chabad does not dispute the averment that LDF's counsel never received the clerk's notice or that it was mailed to the wrong address. In addition, Chabad did not present any controverting evidence. Rather, Chabad argues the affidavit negates that LDF first acquired actual knowledge on January 16, 2014 for two reasons.

First, Chabad emphasizes counsel's averment that the clerk told her on the same day the order was signed that the trial court had "reached a decision." However, the trial court was free to conclude that counsel being informed the court had "reached a decision" was not tantamount to being informed an order had actually been signed.

Second, Chabad asserts counsel's averment that she ceased checking the website after this conversation with the clerk demonstrates counsel chose to "play ostrich" instead. However, if a party did not receive the clerk's mailed notice, the rules allow the appellate timetable to begin on the day the party acquired "actual knowledge" of the signing of the order. *See* Tex. R. App. P. 4.2; Tex. R. Civ. P. 306a(4), (5). The rules do not impose a prerequisite obligation on the party to inquire about whether an order has been signed or provide that the timetable commences on the date the party **should have** acquired actual knowledge. *See id.*

We conclude the evidence is legally and factually sufficient to support the trial court's finding that LDF acquired actual knowledge on January 16, 2014. Accordingly, the trial court did not err by extending the appellate timetables, and LDF's notice of appeal was timely. We overrule Chabad's cross-point.

5

### III. MOTION TO COMPEL ARBITRATION

Under the Act, the trial court must stay proceedings and compel arbitration if the applicant demonstrates (1) an agreement to arbitrate, and (2) the opposing party's refusal to arbitrate. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.021. If the opposing party denies existence of an arbitration agreement, the trial court shall summarily determine that issue. *Id.* § 171.021(b); *see J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If the trial court finds a valid arbitration agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to its enforcement. *J.M. Davidson, Inc.*, 128 S.W.3d at 227.

LDF contends it proved an agreement to arbitrate and that Chabad refused to do so by filing suit once LDF notified Chabad that it must arbitrate its claims. Chabad disputes there is an agreement to arbitrate but not that it refused to do so. Chabad also argues on appeal that any agreement to arbitrate is procedurally unconscionable.[1]

### A.  The Evidence and Trial Court's Findings

To support its motion to compel arbitration, LDF presented a document that is undisputedly the contract between the parties (hereinafter "the contract"). The contract is a standard construction-industry form published by the American Institute of Architects ("AIA"). The form is entitled "AIA Document A101™ – 1997" and is described thereon as "Standard Form of Agreement Between Owner and Contractor where the basis of payment is a STIPULATED SUM." The form

---

[1] Although LDF moved to compel arbitration under the Texas Act, both parties also cite cases under the Federal Arbitration Act ("FAA"). The FAA is similar to the Texas Act in terms of requiring an agreement to arbitrate and permitting an unconscionability defense to its enforcement. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753, 756 (Tex. 2001). Thus, we also cite cases governed by the FAA as persuasive in the present case.

was completed with the specifics for this project, and both parties signed the contract. There is no arbitration agreement expressly included in that document.

Instead, LDF presented a separate document—another AIA form entitled "AIA Document A201™ – 1997" (hereinafter "A201–1997"). Under the title, A201–1997 is described as "General Conditions of the Contract for Construction." The detailed document contains thirty-seven pages, with an identical note at the bottom of each page demonstrating the page is part of A201–1997. The document contains numerous provisions applicable to a construction contract, including the following:

**§ 4.6 ARBITRATION**

**§ 4.6.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.

**§ 4.6.2** Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. . . .

The A201–1997 presented by LDF was not completed with any information independently showing it was applicable to the project at issue. The form includes sections to be completed to identify the project, but they were left blank on this document. Further, it was not signed by either party.

However, as LDF asserted, A201–1997 is expressly incorporated into the contract. On the face of the contract is the following language:

> AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. . . .

On the second page of the contract is Article 1, entitled "The Contract Documents," which provides:

> The Contract Documents consist of this Agreement, **Conditions of the Contract (General, Supplementary and other Conditions)**, Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; **these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein**. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

(emphasis added). Then, Article 8 of the contract, entitled "Enumeration of Contract Documents," states:

> § 8.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:
>
> § 8.1.1 The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.
>
> § 8.1.2 **The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997**.
> . . .

8

(emphasis added).  Furthermore, the contract includes multiple other references to A201–1997 when setting forth various terms, such as rules for calculating progress payments and terminating or suspending the contract.[2]

In response to the motion to compel, Chabad acknowledged that the A201–1997 document attached to LDF's motion contains a clear and express arbitration clause and Chabad did not dispute that its claims fall within the scope of the clause.  However, Chabad contended that it did not agree to the clause.  In support, Chabad presented affidavits from two of its representatives who were involved in negotiating the contract.  Both made the following essentially identical averments:

- A201–1997 was neither signed nor assented to by Chabad.
- Chabad's witnesses neither saw, nor knew of the existence of A201–1997 at the time of contracting with LDF.
- Chabad's witnesses had never seen or received A201–1997 until after filing this lawsuit.
- Chabad's witnesses were not put on notice by LDF that an arbitration clause might govern problems arising out of the Contract.  Nor did Chabad's witnesses bargain for or agree to this clause.

---

[2] For example, one article includes the following terms concerning computation of progress payments:

> . . ., amounts not in dispute shall be included as provided in Section 7.3.8 of AIA Document **A201-1997;**

> Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document **A201-1997**.

(emphasis added).  Another article contains the following terms:

> The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document **A201-1997**.

> The Work may be suspended by Owner as provided in Article 14 of AIA Document **A201-1997**.

(emphasis added).

In the order denying the motion to compel, the trial court recited that it considered the following "[i]n arriving at its decision":

1) The lack of sophistication on the part of [Chabad] in construction matters/contracts,

2) The contract was drafted by [LDF],

3) The lack of a binding arbitration clause within the contract itself, and the lack of specific incorporation by reference of such clause as well as the lack of inclusion of such clause in any documents attached to the signed contract,

4) The rules referencing the arbitration agreement were not attached to the signed contract,

5) Compelling [Chabad] to go to arbitration would constitute a denial of its fundamental constitutional rights including: the right to Trial By Jury, requirement of adherence to the Texas Rules of Civil Procedure and the Texas Rules of Evidence, respectively, at an arbitration subject to appellate review and the right of appeal, without specific agreement of the parties or conspicuous notice in the signed contract or any attachments thereto that the rights described above would be waived by the parties.

We may consider the recitations in the judgment as probative findings of fact and conclusions of law because they were not supplanted by separately filed findings and conclusions. *See In the Interest of C.A.B.*, 289 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2009, no pet.). It is clear the trial court refused to compel arbitration because it concluded Chabad did not agree to arbitrate. Additionally, the findings indicate the trial court determined that enforcing any arbitration agreement would be procedurally unconscionable although the trial court did not expressly use that term. We conclude the parties agreed to arbitrate and Chabad failed to prove procedural unconscionability.[3]

---

[3] The trial court's additional determination that compelling arbitration would violate Chabad's constitutional rights was apparently based on the other two conclusions. Because we

10

## B.     Agreement to Arbitrate

Whether a valid agreement to arbitrate exists is a legal question that we review *de novo*, applying ordinary contract principles.  *J.M. Davidson, Inc.*, 128 S.W.3d at 227–28.

To summarize its findings, the trial court relied on the following facts when concluding there was no arbitration agreement: (1) there was no arbitration clause in the contract itself; (2) the contract did not specifically incorporate by reference an arbitration clause in any other document; and (3) no document containing an arbitration clause was attached to the signed contract.  We conclude these facts fail to negate the existence of an agreement to arbitrate.

The contract not only specifically incorporates A201–1997, which contains an arbitration clause, and identifies it as one of the contract documents, but also reference to A201–1997 is necessary to determine some terms of the contract.  A valid agreement to arbitrate exists when a signed contract incorporates by reference another document containing the arbitration clause.  *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006).  This rule applies even when the document containing the arbitration agreement is unsigned.  *Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc.,* 46 S.W.3d 417, 420 (Tex. App.—Austin 2001, pet. denied); *see also D. Wilson Constr.*, 196 S.W.3d at 781 (not specifically addressing whether incorporated document must be signed but citing *Teal Construction* as example of rule allowing incorporation of separate document containing arbitration clause).  In fact, A201–1997 does not even include a space for signatures.

---

hold the trial court erred by reaching those two conclusions, we need not consider any further constitutional rationale.

11

The above-cited cases are especially persuasive because they involved AIA documents similar in pertinent respects to those in the present case. *See D. Wilson Constr.*, 196 S.W.3d at 777, 781; *Teal Constr.*, 46 S.W.3d at 420. Each court concluded that, although there was no arbitration provision within the general construction contract, the contract incorporated AIA Document A201 which contained an arbitration clause (albeit the *D. Wilson Construction* form was an earlier version than in the present case). *See D. Wilson Constr.*, 196 S.W.3d at 777, 781; *Teal Constr.*, 46 S.W.3d at 420. In fact, the *Teal Construction* contract used the exact same language of incorporation on its face as the contract in the present case. *See Teal Constr.*, 46 S.W.3d at 420.

Additionally, contrary to the trial court's conclusion, there is no requirement that the signed contract specifically refer to the arbitration clause for the clause to be enforceable. In the above-cited cases, the courts held that incorporation of the entire separate document was sufficient to encompass an agreement to all its terms, including the arbitration provision. *See D. Wilson Constr.*, 196 S.W.3d at 781; *Teal Constr.*, 46 S.W.3d at 420.

Also contrary to the trial court's conclusion, there is no requirement that the incorporated document containing the arbitration clause must necessarily be attached to the contract for the clause to be enforceable. We recognize that neither court in the above-cited cases specifically addressed that question. *See D. Wilson Constr.*, 196 S.W.3d at 781; *Teal Constr.*, 46 S.W.3d at 420. However, the absence of any such discussion suggests that whether the document was attached was not dispositive. *See D. Wilson Constr.*, 196 S.W.3d at 781; *Teal Constr.*, 46 S.W.3d at 420; *see also In re Raymond James & Assocs., Inc.*, 196 S.W.3d 311, 19 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) (recognizing that

12

incorporated document containing arbitration clause is not necessarily required to be attached to the contract).

Significantly, the incorporated A201-1997 is a standard AIA form readily identifiable from the contract and available from the AIA. *See D. Wilson Constr. Co.*, 196 S.W.3d at 777 (recognizing Document A201 is a standard construction-industry document published by the AIA which details the parties' respective rights, responsibilities, and relationships on the project). And, the contract makes A201–1997 part of the contract irrespective of whether the document is attached by stating that all enumerated documents "form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein." Thus, under the circumstances of the present case, A201–1997 is incorporated into the contract even if the document was not physically attached when the parties signed the contract.[4]

As mentioned above, Chabad's affiants swore they did not receive a copy of, know about, or read, A201–1997 before executing the contract. The trial court did not include these specific facts when reciting its reasons for refusing to compel arbitration. Nevertheless, assuming the averments are true, they also fail to negate that Chabad agreed to the arbitration clause.

In particular, the law presumes that a party knows and accepts the terms of the contract he signs, and the law does not excuse a party's failure to read the contract when he had an opportunity to do so. *See Nat'l Prop. Holdings, L.P. v.*

---

[4] The trial court also referenced the lack of "conspicuous notice in the signed contract or any attachments thereto." As we construe that language, the court did not find the arbitration clause was inconspicuous within A201–1997. Rather, the court reiterated that the clause was not conspicuously contained in the contract itself or a document attached to the contract. Because we have rejected the proposition that the arbitration clause had to be included in the contract itself or A201–1997 had to be attached, we also reject this lack-of-conspicuous-notice finding as a ground for refusing to enforce the arbitration clause.

*Westergren*, No. 13-0801, — S.W.3d — , 2015 WL 123099, at *4 (Tex. Jan. 9, 2015); *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008); *Indem. Ins. Co. of N. Am. v. W.L. Macatee & Sons*, 101 S.W.2d 553, 556 (Tex. 1937). That presumption includes documents specifically incorporated by reference into the contract. *Lyon Fin. Servs.*, 257 S.W.3d at 232. Chabad presented no evidence that it lacked the opportunity to read either the contract or A201–1997 before signing the contract.

Chabad's affidavits indicate generally that LDF did not provide Chabad with a copy of A201–1997 before the contract was executed. However, Chabad cites no authority that LDF was required to do so, especially considering again that A201–1997 is a standard form available from the AIA. In light of the express language in the contract incorporating A201–1997, we conclude it was incumbent on Chabad to obtain the incorporated document before signing the contract or risk being bound by its terms. In fact, the face of the contract includes the following warning immediately above the incorporation language: "This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification." Consequently, Chabad is presumed to have known about, and accepted, the express language of incorporation on the face of the contract and the terms of the incorporated A201–1997, even if the incorporated document was not attached and Chabad failed to obtain and read it. *See Nat'l Prop. Holdings*, 2015 WL 123099, at *4; *Lyon Fin. Servs.*, 257 S.W.3d at 232; *Indem. Ins. Co.*, 101 S.W.2d at 556; *see also Raymond James & Assocs.*, 196 S.W.3d at 318–19 (holding broker and clients agreed to arbitration where new-account forms signed by clients expressly incorporated separate, unsigned Client Agreement containing arbitration provision, even if Client Agreement was not

14

attached or read by clients, because they were presumed to have read new-account form which placed them on notice of Client Agreement).[5]

On appeal, Chabad presents two additional reasons it did not agree to arbitrate, which were not cited by the trial court in its findings and conclusions. Regardless, we reject both contentions.

First, Chabad contends there is no evidence that the A201–1997 attached to the motion to compel arbitration existed when the contract was executed in 2006. To the contrary, A201–1997 reflects that A201 was copyrighted periodically from 1888 through 1997, with the last copyright date being 1997. The title of the document confirms it was the 1997 version of A201. A note added to the first page shows the 1997 version expired on May 31, 2009 and was replaced by "AIA Document A201™-2007" but AIA continues to make the 1997 version available in PDF format. We recognize that the first page of the document does not mirror the first page as it appeared when the parties' contract was executed in 2006 because the note was obviously added after May 1, 2009. However, the note demonstrates the 1997 form, including all of its contents, was the operative version in 2006 by expressing it did not expire until 2009.

Next, Chabad suggests that certain language in A201–1997 indicates the document was for use only with certain other AIA forms, which did not include the parties' contract because those forms govern the relationship between an owner and an architect or construction manager. We disagree.

---

[5] Chabad asserts on appeal that LDF refused to provide a copy of A201–1997 when requested to do so by Chabad. However, there is no evidence of any such refusal **before** execution of the contract, assuming without deciding such refusal would show Chabad lacked any opportunity to review A201–1997.

The A201–1997 presented by LDF does include the following language near the top of the first page: "For use with AIA Document G612–2001 Part B only." But this language relates to a note which immediately follows, explaining that although A201–1997 expired in 2009, another form, G612–2001 Part B, continues to reference A201–1997; thus, the AIA still makes A201–1997 available in PDF format for use with G612–2001 Part B. Consequently, the quoted language does not indicate that A201–1997 was promulgated for use only with G612-2001 Part B at all times that A201–1997 was in effect.

Other factors support that conclusion. Specifically, the description of A201–1997 shows it is for use generally with "the Contract for Construction." Various provisions in A201–1997 are applicable to the relationship between the owner and contractor, rather than just the owner's relationship with the architect or construction manager. In addition, other courts have recognized A201 is a form routinely incorporated into a general construction contract. *See D. Wilson Constr.*, 196 S.W.3d at 777, 781; *Teal Constr.*, 46 S.W.3d at 420.

The form presented by LDF also includes the following language on the top of the remaining pages: "This A201–1997 PDF file is made available for use with A121CMc–2003 and A131CMc–2003 only." Unlike the language on the first page, this language does not contain a further explanation as to why the AIA continues to make the PDF file available for use with the referenced forms. Nonetheless, that language does not controvert that the entire contents of A201–1997, including the arbitration clause, were the "General Conditions" promulgated for use with a "Contract for Construction" and the parties expressly incorporated all the "General Conditions" into their construction contract.

In sum, we conclude as a matter of law that the parties agreed to arbitrate their dispute.

16

**B. Procedural-Unconscionability Claim**

A court may not enforce an agreement to arbitrate if the court finds the agreement was unconscionable at the time it was made. Tex. Civ. Prac. & Rem. Code Ann. § 171.022. Because the law favors arbitration, the party opposing arbitration bears the burden to prove unconscionability. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001). Procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision—the bargaining process— whereas substantive unconscionability refers to the fairness of the arbitration provision itself. *See In re Halliburton Co.,* 80 S.W.3d 566, 571 (Tex. 2002).

Two factors cited by the trial court for refusing to compel arbitration suggest a procedural-unconscionability finding because they concerned the circumstances under which the contract was executed: (1) Chabad's lack of sophistication in "construction matters/contracts"; and (2) the contract was drafted by LDF. On appeal, Chabad asserts that LDF engaged in the "sharp" business practice of hiding the existence of an arbitration agreement from a less sophisticated party. However, there is no evidence supporting the trial court's findings or that the arbitration clause was procedurally unconscionable.

As an initial matter, Chabad argues the lack of a reporter's record of the hearing raises a presumption that the trial court heard sufficient evidence to support its findings pertinent to procedural unconscionability and therefore we must summarily affirm. If the nature of a pretrial proceeding, the trial court's order, the parties' briefs, or other matters show an evidentiary hearing took place in open court, the appellant must present a record of that hearing to establish harmful error. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex.

2005). Otherwise, we should presume that a pretrial hearing was non-evidentiary and the trial court considered only the evidence filed in the clerk's record. *Id.*

Here, the order reflects the hearing was not evidentiary. The trial court recited that it considered "the pleadings on file, including the motion, response and reply, the authority cited and oral arguments of the counsel." Nothing in the record contradicts that recital and indicates the trial court considered evidence at the hearing. In its appellate brief, Chabad does not affirmatively state that any evidence was heard or identify any specific testimony or exhibits introduced. Instead, Chabad merely asserts that we must presume "the trial court heard something at the hearing" that would support its conclusions—an assertion too general to indicate the trial court heard evidence, as opposed to just arguments. LDF asserts the hearing was not evidentiary and thus it had no reason to request a reporter's record. Accordingly, there is no presumption, and we consider only the evidence attached to the parties' written filings.

In response to the motion to compel, Chabad did not raise, or present evidence of, procedural unconscionability, much less evidence regarding lack of sophistication on its part. The affidavits of its representatives were silent regarding any level of sophistication. Moreover, there was no evidence the contract was drafted by LDF. To the contrary, as discussed above, the contract was a standard form promulgated by the AIA. Even if LDF provided the form to be completed by the parties, such fact was alone insufficient to demonstrate procedural unconscionability. *See Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex. App.—Houston [1st Dist.] 1996, no writ) (rejecting homeowner's argument that arbitration provision was unconscionable even where contract was drafted by builder). Again, there was no evidence that LDF precluded Chabad from obtaining A201–1997, expressly incorporated into the contract, and learning of the

18

arbitration clause or other otherwise forced or tricked Chabad into accepting the clause. Accordingly, the trial court erred by refusing to compel arbitration on such grounds.

We sustain LDF's issue, reverse the trial court's order denying LDF's motion to compel arbitration, and remand with instructions that the trial court sign an order compelling arbitration and staying the present proceedings.


/s/    John Donovan
        Justice


Panel consists of Justices Boyce, Jamison, and Donovan.