**DISSENT and Opinion Filed March 1, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01028-CV

### IN RE FREIGHTQUOTE.COM, Relator

**Original Proceeding from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-01862-D**

## DISSENTING OPINION
Opinion by Justice Whitehill

I respectfully dissent from the majority opinion because the undisputed facts and controlling law permit only one conclusion: The parties unambiguously agreed to a contract which incorporated by reference a valid forum selection clause requiring that this dispute be tried in Missouri. Therefore, the trial court abused its discretion in refusing to enforce that agreement, and mandamus lies to correct that error.

### I. The Issue

This case turns on whether AMCAD's signature on a contract immediately below the words "CUSTOMER AGREES TO THE ORGANIZATION'S TERMS AND CONDITIONS, WHICH CAN BE FOUND AT WWW.FREIGHTPAYCENTER.COM" incorporated by reference the terms and conditions found at that location. The answer to that question based on accepted contract law principles and our facts is "yes."

1

Accordingly, we should conditionally grant the petition and direct the district court to dismiss the case against Freightquote.com without prejudice.

## II.    Controlling Facts

The controlling facts are straightforward and undisputed:

1.      Freightquote.com "is an online transportation broker of freight services operating throughout North America."  "FreightQuote markets its services through the internet and bases its broker services on technology it developed for customers to compare carrier freight services."

2.      AMCAD "enrolled" as a Freightquote.com customer on May 27, 2014.

3.      AMCAD sued Freightquote.com for breaching a contract between those two parties.

4.      The parties' contract here is a bill of lading.[1]

5.      AMCAD had 134 similar contracts with Freightquote.com before this one.  Each one relied on a website link to direct AMCAD to the terms and conditions applicable to that transaction.

6.      AMCAD initiated this contract over the phone, and Freightquote.com confirmed the agreement with an email.

7.      That confirming email contained a blue hyperlink to "Freightquote.com's Terms and Conditions."

8.      That same email also (i) attached a bill of lading for the shipment and (ii) directed AMCAD to have the bill of lading ready to present to the driver at pickup.

9.      AMCAD signed the bill of lading.

---

[1] *Texarkana & Ft. S. Ry. Co. v. Brass*, 260 S.W. 828, 829 (Tex. Comm'n App. 1924, judgm't adopted); *see Federal Express Corp. v. Tech One Trading Co*., No. 05-03-01182-CV, 2004 WL 1663964, at *1 (Tex. App.—Dallas July 19, 2004, no pet),(citing *Se. Pac. Transp. Co. v. Coml. Metals Co.,* 456 U.S. 336, 342 (1982)).

10. Directly above AMCAD's signature, the contract says: "CUSTOMER AGREES TO THE ORGANIZATION'S TERMS AND CONDITIONS, WHICH CAN BE FOUND AT WWW.FREIGHTPAYCENTER.COM."

11. The terms and conditions found on that website begin by stating in large letters that they are "Freightquote terms and conditions."

12. Those terms and conditions define the word "Company" as used therein to be "Freightquote.com, Inc.®" and its corporate affiliates.

13. They also (i) define the word "Customer" to be "The enrolled Customer, Shipper, and/or Consignee" and (ii) provide that the Customer agrees "to these TERMS AND CONDITIONS."

14. The terms and conditions apply to all shipments scheduled by Customer:

These TERMS AND CONDITIONS shall apply to all shipments scheduled by Customer, unless and until these TERMS AND CONDITIONS are altered or amended by the Company.

(There is no suggestion that the terms and conditions have been altered or amended in any way relevant to this case.)

15. The terms and conditions also contain a forum selection clause providing that any litigation between the Company and the Customer relating to any shipment tendered pursuant to the terms and conditions shall be filed in specified courts in Missouri.

16. And the terms and conditions stipulate that the Company is a broker only.

17. Finally, the terms and conditions state policies and procedures for handling claims between the Company and the Customer. AMCAD's petition states that "AMCAD cooperated with FreightQuote and followed FreightQuote's claim procedures" relevant to this dispute.

3

## III. Analysis

Texas law requires Texas courts to enforce valid forum selection clauses that encompass disputes before those courts.

That a contract existed between AMCAD and Freightquote.com is certain: AMCAD sued Freightquote.com for contract breach. There is only one contract between those parties at issue here. AMCAD obviously knows who the contracting parties are. AMCAD's signature on that contract is not disputed. That contract says AMCAD agreed to the "Organization's" terms and conditions found at a specific website. Freightquote.com is the only organization that the word "Organization" in this context could logically refer to. The contract identifies only one website to engage for reading the applicable terms and conditions.

The terms and conditions found at the designated website contain a forum selection clause, which mandates that covered disputes be brought in specific Missouri courts. This dispute is within that clause's scope. No evidence in this record could support a finding that (i) the clause imposes an impermissible burden on AMCAD, (ii) AMCAD was defrauded into agreeing to that clause, or (iii) any other recognized ground exists for avoiding the clause.

Accordingly, the trial court clearly abused its discretion by refusing to enforce that clause in this case.

## A. Applicable Law

We stated in *Bob Montgomery Chevrolet, Inc. v. Dent Zone Companies* that:

When construing a contract, our primary goal is to determine the parties' intent as expressed in the terms of the contract. *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.,* 297 S.W.3d 248, 252 (Tex. 2009); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). Unsigned documents may be incorporated into the parties' contract by referring in the signed document to the unsigned document. *Owen v. Hendricks,* 433 S.W.2d 164, 167 (Tex. 1968). The language used to refer to the incorporated document is not important as long as the signed document "plainly refers" to the incorporated document. *Id.; In re C & H News Co.,* 133 S.W.3d 642,

4

645 (Tex. App.—Corpus Christi 2003, orig. proceeding). Documents incorporated into a contract by reference become part of that contract. *In re 24R, Inc.,* 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam). When a document is incorporated into another by reference, both instruments must be read and construed together. *In re C & H News Co.,* 133 S.W.3d at 645–46.

Plainly referring to a document requires more than merely mentioning the document. *See Trico Marine Servs., Inc. v. Stewart & Stevenson Technical Servs., Inc.,* 73 S.W.3d 545, 549–50 (Tex. App.—Houston [1st Dist.] 2002, mandamus denied). The language in the signed document must show the parties intended for the other document to become part of the agreement. *See One Beacon Ins. Co. v. Crowley Marine Servs., Inc.,* 648 F.3d 258, 267 (5th Cir. 2011) (citing 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 30:25, at 234 (4th ed. 1999) ("in order to uphold the validity of terms incorporated by reference, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms")); 17A C.J.S. *Contracts* § 402 (2011) ("For an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.").

409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.).

It does not matter that the additional terms and conditions were not physically attached to the bill of lading itself. *See LDF Constr., Inc. v. Tex. Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 729 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("[T]here is no requirement that the incorporated document containing the arbitration clause must necessarily be attached to the contract for the clause to be enforceable.").

Furthermore, the weight of authority is that it doesn't matter if the additional terms and conditions are to be found on the internet instead of in a physical document. *See, e.g.*, *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 269 (5th Cir. 2011) ("[U]nder admiralty law—which generally follows the common law of contracts in resolving maritime contract disputes—maritime contracts may validly incorporate terms from a website in the same manner that they may incorporate by reference terms from paper documents."); *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*, No. 5:15-cv-1310, 2016 WL 705261, at *5 (N.D. Ohio Feb. 23, 2016) ("Several courts have applied traditional contract law to find terms and

conditions located on a company's website to be incorporated into a contract where they were clearly referred to and could be easily located by the challenging party, especially where that party is a commercial entity."); *Burcham v. Expedia, Inc.*, No. 4:07CV1963 CDP, 2009 WL 586513, at *2 (E.D. Mo. Mar. 6, 2009) ("A customer on notice of contract terms available on the internet is bound by those terms."); *Pentecostal Temple Church v. Streaming Faith, LLC*, No. 08-554, 2008 WL 4279842, at *5 (W.D. Pa. Sept. 16, 2008) ("Plaintiff's assertions that the [forum selection] clause should be disregarded because the Purchase Order incorporated terms and conditions only available on the Defendants' website, and not provided in hard-copy to the Plaintiff, must also fail."); *see also Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, No. 1:11-CV-01026, 2012 WL 32440, at *6 (D.S.D. Jan. 5, 2012) ("With the widespread accessibility of the Internet, companies are turning to posting their general terms and conditions online and incorporating them into a physical document by reference to the Internet site where they are located. Some courts are accepting that practice."). We should adopt this rule.

## B.  Application to Facts

The undisputed mandamus record establishes that AMCAD contacted Freightquote.com to arrange for shipping AMCAD's goods to AMCAD's customer. That contact resulted in a bill of lading contract between AMCAD and Freightquote.com for that purpose. That bill of lading is the contract on which AMCAD bases its contract breach claims against Freightquote.com. And it is that same contract that created the relationship on which AMCAD bases its tort claims against Freightquote.com.

The bill of lading plainly (i) refers to the additional terms and conditions and (ii) tells AMCAD where to find them. The contract also plainly expresses AMCAD's unmistakable agreement to those terms and conditions.

6

Not only does the record establish that AMCAD agreed to the terms and conditions, but the record also establishes that Freightquote.com is the contract's counter-party. Given that there is only one bill of lading involved in this case in which Freightquote.com is the defendant and that Freightquote.com sent that bill of lading to AMCAD, the only logical conclusion is that the word "Organization" in this context refers to only Freightquote.com.

Furthermore, the website confirms that Freightquote.com is the "Organization" referred to in the bill of lading by labeling the terms and conditions as "Freightquote terms and conditions."

Additionally, the facts establish that AMCAD is the Customer and that Freightquote.com is the Company as the terms and conditions define and use those terms. AMCAD is the Customer that contracted with Freightquote the Company for Freightquote to arrange for shipping to deliver AMCAD's goods.

AMCAD cannot reasonably argue that it could not anticipate having to engage a website to find the applicable terms and conditions; it was doing business with an entity named "Freightquote.com."

Moreover, AMCAD knew from day one that Freightquote.com's terms and conditions were to be found by visiting a website location. That fact was stated in the initial Customer Enrollment and was repeated 134 more times before signing the specific bill of lading in this case. That it successfully completed six prior entirely web-based transactions with Freightquote.com proves AMCAD's ability to successfully navigate that platform.

And AMCAD could not have missed the reference to the website link to the terms and conditions—AMCAD's signature agreeing to be bound by them appears right below the reference to those terms and conditions and the website link.

7

Nor can AMCAD reasonably argue that the web-link reference to "Freightpaycenter.com" somehow misled AMCAD and nullifies AMCAD's agreement to the terms and conditions found by following the link. The relevant terms and conditions could have resided on any website with any name and any web-address so long as Freightquote.com gave AMCAD the correct address to get to that website. It did.

There was only one link and only one website specified for AMCAD to follow. AMCAD could not have gotten lost and ended up with a different set of terms and conditions by following that path. These facts and result are the same as if AMCAD agreed to be bound by a set of terms and conditions contained in a specific folder located on a specific desk in a specific AMCAD office.

AMCAD does not deny that its claims and litigation against Freightquote.com fall within the forum selection clause's scope if the parties' contract includes that clause.

As discussed above, it matters not that the terms and conditions were not physically attached to the bill of lading or were on a website.

Because the only logical conclusion is that the parties' contract incorporated by reference the terms and conditions found on the specified website, the trial court abused its discretion by refusing to enforce the forum selection clause included in those terms and conditions.

C.  ***Bob Montgomery Chevrolet* does not compel a different conclusion.**

*Bob Montgomery Chevrolet, Inc. v. Dent Zone Companies* is distinguishable because, unlike the present case, the contract there did not say that the parties agreed to the terms and conditions written on the website. Instead, in that case we wrote:

> We conclude the referring language in this case, "Additional benefits, qualifications and details of the PDR LINX Service Program are available for your review at our website: http://www.linxmanager.com/pdf/CRCTermsConditions. pdf," does not indicate the parties intended to incorporate the internet document. Instead, the

8

language indicates the internet document contained informative but noncontractual material about the PDR LINX Service Program.

*Id.* at 193. Assuming, as we must, that *Dent Zone* was correctly decided on its particular facts, the different, more direct language in the present case plainly states the parties' unambiguous agreement to the terms and conditions stated at the designated website. Thus, *Dent Zone*'s specific holding does not apply to the specific contract before us. Instead, we should follow *Dent Zone*'s general principles quoted above.

### D.    Conclusion

Although allowed sparingly and as an extraordinary remedy, mandamus relief exists to remedy situations where a trial court clearly abuses its discretion and the relator has no adequate appellate remedy, such as where a trial court declines to enforce a valid forum selection clause covering a dispute before it.

The record here conclusively establishes that (i) the parties plainly agreed to governing, written terms and conditions residing at a specific and readily accessible website; (ii) those terms and conditions contain a valid forum selection clause requiring that certain disputes be litigated in designated Missouri courts; and (iii) the parties' present dispute falls within that clause's scope. That being so, existing Texas law requires our courts to respect and enforce the parties' contract. Because the trial court declined to so, mandamus relief is proper in this case.

### IV.    Disposition

Accordingly, we should grant relator's petition and direct the trial court to dismiss this case without prejudice with mandamus to issue only if the trial court does not do so within fifteen days.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

181028DF.P05

9