# Court of Appeals
## Tenth Appellate District of Texas

---

### 10-24-00350-CV

---

Mitchell Construction Company, Inc,
Appellant

v.

Superior Commercial Concrete, LLC,
Appellee

---

On appeal from the
170th District Court of McLennan County, Texas
Judge Jim Meyer, presiding
Trial Court Cause No. 2024-130-4

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

### MEMORANDUM OPINION

Superior Commercial Concrete, LLC (Superior) sued Mitchell Construction Company, Inc. (Mitchell) and Messer, LLC (Messer) seeking payment for work performed by Superior on a construction project. Mitchell now brings this interlocutory appeal contending the trial court erred when it denied Mitchell's motion to compel arbitration and subsequent motion to reconsider. We will reverse and remand.

## A. Factual and Procedural Background

Messer contracted with Mitchell to serve as general contractor on a commercial construction project. Mitchell apparently put the project out for bids and Superior's bid to do the concrete work on the project was accepted. Mitchell then presented Superior with a draft of a proposed written contract (hereinafter "subcontract") to memorialize their agreement regarding the project. Superior returned an unsigned redlined version of the proposed written subcontract to Mitchell that included some revisions and comments. Mitchell nor Superior ever signed a written subcontract. Despite that, the parties moved forward with the project.

Superior filed suit in January 2024 against Mitchell and Messer alleging that both defendants "failed and refused to compensate" Superior for its services. Superior's claims against Mitchell included breach of contract, breach of fiduciary duty under the Texas Construction Trust Fund Act; conversion; and unjust enrichment. Superior's claim against Messer included claims for quantum meruit and foreclosure of its statutory and constitutional liens.

In October 2024, Mitchell filed a motion to compel arbitration based on an arbitration clause within both the original draft and redlined draft of the proposed written subcontract. In support, Mitchell attached the redlined version of the draft of the proposed written subcontract. Superior filed a

response to the motion to compel arbitration in which it was Superior's contention that the proposed written subcontract was never formalized because the parties never signed the proposed written subcontract. Superior argued that because of Mitchell's failure to establish the existence of a valid arbitration agreement the trial court should deny the motion to compel arbitration. During the hearing in the trial court, Superior reiterated that the parties never signed the proposed written subcontract, so there was no formal finalized agreement. Mitchell argued that if the parties acted in accordance with the proposed written subcontract, then the lack of signatures does not bar enforcement of an arbitration provision. The trial court denied Mitchell's motion to compel arbitration.

Next, Mitchell requested that the trial court reconsider its denial of the motion to compel arbitration asserting that (1) because Superior is seeking benefits under the contract it is estopped from avoiding arbitration, and (2) Superior's act of signing change orders that referenced the unsigned subcontract resulted in the incorporation by reference of all terms of the subcontract. In support, Mitchell presented eight change orders signed by a representative of Superior; seven invoices from Superior; and eight bids from

Superior that correspond with the change orders.[1] Each change order included language as follows:

> Except for such CHANGES as are set forth herein, all of the terms and conditions of your SUBCONTRACT, and as it may have been heretofore modified in writing, shall be and remain the same. Unless specifically provided for herein, no extension of time for the completion of this SUBCONTRACT by reason of this CHANGE ORDER is allowed.

Near the bottom, the change order stated that the "foregoing CHANGE ORDER is ACCEPTED upon the terms and conditions above stated and those in the original SUBCONTRACT." Both parties signed each of the change orders.

In Superior's response to Mitchell's motion to reconsider, it argued that "directs-benefits estoppel" is a narrow exception that does not apply here. Superior argued that it was not suing under the unsigned draft of the proposed written contract but was suing for breach of an implied or oral contract. After a hearing on the motion to reconsider, the trial court denied Mitchell's motion.

## B. Standard of Review

We review interlocutory orders denying motions to compel arbitration for abuse of discretion—deferring to the trial court's factual determinations if they are supported by the evidence—and reviewing questions of law de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses

---

[1] Mitchell also supplied an affidavit certifying the exhibits.

its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules and principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). When a trial court improperly denies a party's right to arbitrate based on a valid and enforceable arbitration agreement, the court has abused its discretion. *In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 194 (Tex. 2022) (orig. proceeding). Whether an arbitration agreement is valid and enforceable is a legal question subject to de novo review. *Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 586 (Tex. 2022) (per curiam).

## C. Issue Two

Mitchell contends the trial court erred in denying its motion to compel arbitration because the terms of the proposed written subcontract were referenced, incorporated, and affirmed by Superior.

### 1. Authority

To compel arbitration, a party must first prove that a valid arbitration agreement exists. *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 (Tex. 2021). To do so, courts apply state contract law principles. *Cerna as Next Friend of R.W. v. Pearland Urban Air, LLC*, 714 S.W.3d 585, 589 (Tex. 2025). Under the incorporation by reference doctrine, a later signed agreement may incorporate a referenced unsigned agreement. *See Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968); *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). No "magic word" requirement exists to incorporate extrinsic terms or

documents into a contract. *See In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015), *opinion after certified question answered,* No. 12-30230, 2015 WL 13918242 (5th Cir. June 9, 2015); *see also Castillo Info. Tech. Services, LLC v. Dyonyx, L.P.*, 554 S.W.3d 41, 47–48 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Rather, the later agreement needs to only manifest an intent to include the extrinsic terms, documents, or agreements. *See In re Deepwater Horizon*, 470 S.W.3d at 460. Any description or reference to other documents places a duty to inquire on a party to an agreement. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982). This duty to inquire requires a party to follow up from one instrument to another, until the party obtains complete knowledge of all matters referenced. *Id.* However, it is a requirement that the contract reference the incorporated document by name. *Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.*, 228 S.W.3d 431, 436 (Tex. App.—Dallas 2007, no pet.). This is because contract law obligates contracting parties to read what they sign to protect themselves, "and [they] are presumed, as a matter of law, to know the contract's terms." *Id.* (quoting *Castroville Airport, Inc. v. City of Castroville*, 974 S.W.2d 207, 211 (Tex. App. —San Antonio 1998, no pet.)).

2. Discussion

We must first consider whether the parties entered into a valid contract. To establish the existence of an enforceable contract, a party must prove (1) an

offer, (2) acceptance of the offer, (3) mutual assent or "meeting of the minds" regarding the subject matter and essential terms of the contract, and (4) consideration, or mutuality of obligations. *See Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam).

To prove that an offer was made, a party must show: (1) the offeror intended to make an offer, (2) the terms of the offer were clear and definite, and (3) the offeror communicated the essential terms of the offer to the offeree. *BoRain Capital, LLC v. Hashmi*, 533 S.W.3d 32, 36 (Tex. App.—San Antonio 2017, pet. denied). Superior's bid was tracked in each change order form Mitchell submitted to Superior by reciting the same or a similar description of the service to be performed and the same lump sum cost of the services. A contractor's bid typically constitutes an offer to contract. *See Sedona Contracting, Inc. v. Ford, Powell & Carson, Inc.*, 995 S.W.2d 192, 197 (Tex. App.—San Antonio 1999, pet. denied) (tender of bid was offer to contract); *see also Peterson v. NCNB Tex. Nat'l Bank*, 862 S.W.2d 182, 183 (Tex. App.—Eastland 1993, no writ); *Urban Elec. Services, Inc. v. Brownwood Indep. Sch. Dist.*, 852 S.W.2d 676, 677–78 (Tex. App.—Eastland 1993, no writ). The change orders also included language that they were "accepted" upon the terms and conditions stated in the change order and in the "original subcontract." Thus, Mitchell's change orders did not unconditionally accept Superior's offers contained in the bids. An acceptance must be identical to the offer, if the

acceptance modifies the terms of an offer, there is no agreement because the modification constitutes a counteroffer. *Schriver v. Tex. Dep't of Transp.*, 293 S.W.3d 846, 851 (Tex. App.—Fort Worth 2009, no pet.). There is nothing in the record before us that Superior rejected any change orders or made any interlineations or revisions to the change orders. The terms of Mitchell's change orders were clear and definite because they tracked Superior's bid and referenced the proposed written subcontract, thus both Mitchell and Superior were fully aware of the terms. The change orders communicated the essential terms—the service costs, the service to be provided, and mutual obligations. The change orders also stated they were not "valid" until signed by Mitchell, as contractor, and Superior, as subcontractor. A party will typically manifest its assent by signing an agreement. *See Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013). Superior accepted the additional terms contained in Mitchell's change orders by its representative's signature thereto. We conclude that Superior's bids were offers to contract and Mitchell's change orders were an acceptance of Superior's offers with additional terms, essentially counteroffers, and that the parties had a mutual understanding of the terms, assented to the terms contained in the change orders, and formed a binding contract via the contract documents.

The next question is whether the change orders incorporated the subcontract. Like this case, in *LDF Const., Inc.*, the Fourteenth Court of

Appeals applied the incorporation doctrine to enforce an arbitration clause. *LDF Constr., Inc. v. Tex. Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 728 (Tex. App.—Houston [14th Dist.] 2015, no pet.). There, the plaintiff signed a contract with LDF that referenced a separate contract that had a provision to arbitrate. *Id.* Despite neither party signing the referenced contract the court incorporated it. *Id.* The court found the signed contract identified the referenced contract and that the referenced contract was necessary to determine some terms. Similarly, in *U-Haul Co. of Tex.*, the First Court of Appeals came to the same conclusion. *U-Haul Co. of Tex. v. Toro*, No. 01-22-00883-CV, 2023 WL 8262720, at *9 (Tex. App.—Houston [1st Dist.] Nov. 30, 2023, no pet.). In that case, U-Haul and the plaintiff signed an Equipment Rental Contract. *Id.* at *8. The Equipment Rental Contract stated the plaintiff "agreed to submit all legal claims in accordance with the arbitration agreement, incorporated by reference, and available at uhaul.com/arbitration or from his local U-Haul representative." *Id.* (quotation modified).

Here, the undisputed facts show, Superior had already reviewed and made comments on the proposed draft subcontract. Thus, Superior had actual knowledge of the subcontract and its terms. *See Bynum v. Prudential Residential Services, Ltd. P'ship*, 129 S.W.3d 781, 789 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004) (finding when both parties have actual knowledge of the

terms, an agreement can be enforced even if the fair notice requirements were not satisfied). The parties agreed to multiple change orders, all expressly referencing the subcontract. The change orders included a provision that the change order was "accepted upon the terms and conditions" included in the change order and "those in the original SUBCONTRACT." Moreover, the change order identified the subcontract by its number, as was required by the subcontract, and referenced the subcontract eight times, six of them in all uppercase letters. Superior also sent multiple invoices referencing the subcontract's number. Superior's bids contained in the record before us stated that the quote was "revocable until accepted in a written contract containing mutually acceptable terms and conditions." And each time they executed a new change order, the parties incorporated the terms and conditions of the proposed subcontract.

Superior claims: (1) that Mitchell's reliance on "*its own Change Orders*" is "unavailing"; and (2) the fact there are two drafts of the subcontract with the same subcontract number creates an evidentiary issue. However, Superior signed and assented to what it refers to as "*[Mitchell's] own Change Orders.*" The fact that two versions of the proposed written subcontract exist does raise a question of which document forms the contract and amounts to a latent ambiguity that allows for the admission of parol evidence. *Farmers Ins. Exch. v. Leonard*, 125 S.W.3d 55, 65 (Tex. App.—Austin 2003, pet. denied). However,

both documents contain the same arbitration clause, and it was not revised by Superior in its redlined version. Regardless of whatever draft of the proposed written subcontract that may be applicable, the arbitration clause is the same. Accordingly, we conclude that the change orders incorporated the arbitration clause contained in the drafts of the proposed written subcontracts.

We sustain Mitchell's second issue.

## D. Conclusion

Because we sustain issue two, we do not need to address issue one. *See* TEX. R. APP. P. 47.1 (opinion must address issues "necessary to final disposition of the appeal").

We reverse the trial court's order denying Mitchell's motion to compel arbitration. We remand this cause to the trial court for proceeding consistent with this memorandum opinion.

_____
MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: October 9, 2025

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Reversed and Remanded
CV06

