

# IN THE
# TENTH COURT OF APPEALS

## No. 10-20-00133-CV

**TERRY AND KIM SCOTT,**

                                        **Appellant**

 **v.**

**S2S DOMAIN WACO ASSOCIATES, LLC AND ASPEN HEIGHTS WACO PROJECT, LTD,**

                                        **Appellee**

From the 414th District Court
McLennan County, Texas
Trial Court No. 2018-20-5

**&**

## No. 10-20-00145-CV

## IN RE TERRY AND KIM SCOTT

Original Proceeding

## MEMORANDUM OPINION

In appellate cause number 10-20-00133-CV, appellants, Terry and Kim Scott, contend that the trial court: (1) abused its discretion by denying their motion filed under Texas Rule of Civil Procedure 306a, *see* TEX. R. CIV. P. 306a; and (2) erred when it granted summary judgment in favor of appellees, S2S Domain Waco Associates, LLC ("Domain") and Aspen Heights Waco Project, Ltd. ("Aspen Heights"), on limitations grounds. Concurrently, in their petition for writ of mandamus in appellate cause number 10-20-00145-CV, the Scotts assert that the trial court: (1) abused its discretion by denying their Rule 306a motion to extend the appellate deadlines; and (2) erred by failing to make a finding regarding actual knowledge under Texas Rule of Appellate Procedure 4.2(c). *See* TEX. R. APP. P. 4.2(c). Because we hold that the record does not contain legally-sufficient evidence demonstrating that counsel for the Scotts had actual knowledge of the trial court's signed judgment on the date specified by the trial court, and because we conclude that the trial court erred by granting summary judgment in favor of appellees on limitations grounds, we reverse and remand the trial court's November 4, 2019 final judgment in appellate cause number 10-20-00133-CV. Further, because of our disposition of the Scotts' direct appeal in appellate cause number 10-20-00133-CV, and because the trial court has made a finding pursuant to Texas Rule of Appellate Procedure 4.2(c), we dismiss the Scotts' petition for writ of mandamus in appellate cause number 10-20-00145-CV as moot.[1]

---

[1] In light of our disposition, all pending motions are dismissed as moot.

**The Scotts' Rule 306a Motion**

In the instant case, the Scotts sued appellees, S2S Domain Waco Associates, LLC and Aspen Heights Waco Project, Ltd. for violations of the Texas Water Code, as well as for trespass, nuisance, and negligence, asserting that appellees improperly diverted water from their property onto the Scotts' property, causing flooding on the Scotts' property. After filing original answers denying the allegations made by the Scotts, appellees filed multiple motions for summary judgment, alleging, among other things, that the Scotts' lawsuit should be dismissed on limitations grounds.

On July 30, 2019, the trial court sent a letter by email notifying the parties that it intended to grant a traditional motion for summary judgment in favor of Domain on the affirmative defense of statute of limitations. Later, on September 11, 2019, the trial court sent a letter by email notifying the parties that it intended to grant the traditional motion for summary judgment filed by Aspen Heights also based on limitations. In both letters, the trial court indicated that the parties would need to prepare an order for the trial court to sign. Trial counsel for the Scotts acknowledges that he received and reviewed the September 11, 2019 email from the trial court.

In the trial court and on appeal, the Scotts argue that, unbeknownst to them, the trial court signed a final summary judgment on November 4, 2019, whereby the trial court granted the summary judgments filed by Domain and Aspen Heights based on limitations. On November 5, 2019, a copy of the November 4, 2019 final summary

judgment was emailed to counsel for both Domain and Aspen Heights, as well as both of the Scotts' attorneys, at their designated email addresses. The email was sent by the trial court's court coordinator, Carla Dunn, from her county email address. The subject line of the email specifically stated: "Scott, et al. v. S2S Domain Waco Assoc., LLC, et al" and indicated that there was an attachment entitled, "Final Summary Judgment.pdf." This email was designated as having "High" importance.

The Scotts took no action in the trial court until January 30, 2020, when they inquired about whether the trial court had signed the final judgment. On February 14, 2020, the Scotts filed a motion under Texas Rule of Civil Procedure 306a(4) to determine the date of notice and the date they acquired actual knowledge of the trial court's November 4, 2019 final summary judgment to determine applicable appellate deadlines. *See* TEX. R. CIV. P. 306a(4). In his motion, lead counsel for the Scotts, Jim Dunnam, asserted that neither he nor co-counsel, David Dumas, acquired actual knowledge of the trial court's final summary judgment until January 30, 2020, when an assistant from lead counsel's law firm contacted the trial court to ask for a status hearing to ascertain the trial court's intent to sign a final order in this case.

In an affidavit in support of the Rule 306a motion, lead counsel admitted that he later found an email dated November 5, 2019, from Dunn's county email address in his email inbox, but denied ever reading the email. Lead counsel emphasized that the November 5, 2019 email was from Dunn's county email address, whereas the emails

regarding the letter rulings from the trial court were from the trial court's official email account. Lead counsel stated that he likely did not see the November 5, 2019 email due to it not coming from the trial court's email account. Lead counsel also noted that the trial court's final summary judgment had not been filed with the McLennan County District Clerk, and no notice had been received by his office from the District Clerk's Office. *See id.* at R. 306a(3) ("When the final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail advising that the judgment or order was signed."). Nonetheless, lead counsel acknowledged acquiring actual knowledge of the final summary judgment on January 30, 2020. The Scotts also attached additional affidavits in support of their Rule 306a motion, including that of co-counsel, who echoed lead counsel's sentiments.

Both Domain and Aspen Heights filed responses to the Scotts' Rule 306a motion. The trial court conducted a hearing on the Scotts' Rule 306a motion, wherein lead counsel testified in support of the motion. At the conclusion of the hearing, the trial court took the matter under advisement. On April 9, 2020, the trial court signed an order denying the Scotts' Rule 306a motion.

On April 28, 2020, the Scotts filed a notice of appeal seeking to appeal from the November 4, 2019 final summary judgment, as well as "all written orders, oral rulings, and rulings by operation of law," including their Rule 306a motion and a motion to modify and a motion for new trial that was filed. The Scotts' direct appeal was assigned

appellate cause number 10-20-00133-CV. The Scotts also filed a petition for writ of mandamus in appellate cause number 10-20-00145-CV, challenging only the trial court's ruling on the Rule 306a motion and the trial court's failure to make a finding regarding when the Scotts or the Scotts' attorneys acquired actual knowledge that the judgment was signed, in accordance with Texas Rule of Appellate Procedure 4.2(c). *See* TEX. R. APP. P. 4.2(c).

Domain has filed a motion to dismiss the Scotts' direct appeal in appellate cause number 10-20-00133-CV for want of jurisdiction, but did not file an appellee's brief. Aspen Heights filed an appellee's brief in the Scotts' direct appeal. Neither Domain nor Aspen Heights have filed a response to the Scotts' petition for writ of mandamus in appellate cause number 10-20-00145-CV.

Shortly after oral argument before this Court, we issued an order abating and remanding these cases to the trial court. In our order, we: (1) directed the trial court clerk to file a Supplemental Clerk's Record containing the file-stamped final summary judgment signed on November 4, 2019, if it was not lost or destroyed; and (2) ordered the trial court to "make findings that include, but are not limited to, the required finding in Texas Rule of Appellate Procedure 4.2(c) and any other findings that the trial court deems appropriate."

We have now received two Supplemental Clerk's Records containing not only the signed November 4, 2019 final summary judgment, which was filed in the District Clerk's

Office on November 10, 2021, but also a letter from the trial court stating the following, in its entirety:

> Pursuant to TRAP 4.2(c), I find counsel was notified of the court's ruling on the Motion for Summary Judgment on September 11, 2019. The actual judgment was signed on November 4, 2019, and emailed to counsel November 5th. Therefore, counsel had notice of the signed order on November 5, 2019. Counsel did correspond with the court on November 4, 2019[,] related to the order. Mr. Dunnam indicated he would not sign the order since he intended to appeal the ruling.

*See id.* (noting that, after hearing a motion filed under Texas Rule of Civil Procedure 306a, "the trial court must sign a written order that finds the date when the party or the party's attorney first either received notice or acquired actual knowledge that the judgment or order was signed").

In their first issue in the direct appeal, the Scotts challenge about the trial court's order denying their Rule 306a motion. Specifically, the Scotts argue that there is no evidence that they acquired actual knowledge of the signed November 4, 2019 final summary judgment on November 5, 2019.

Under Texas Rule of Appellate Procedure 26.1, a notice of appeal must be filed within thirty days after the judgment is signed. *See* TEX. R. APP. P. 26.1. The court of appeals may extend the time to file an appeal if, within fifteen days of the thirty-day deadline, the party files a notice of appeal in the trial court and a motion to extend the deadline in the appellate court. *See id.* at R. 26.3. These deadlines are jurisdictional. *Id.* at R. 25.1(b); *see In re K.L.L.*, 506 S.W.3d 558, 560 (Tex. App.—Houston [1st Dist.] 2016, no

pet.) (stating that, without a timely notice of appeal, the appellate court lacks jurisdiction over the appeal).

The appellate deadlines may be extended if a party or his attorney does not receive notice of the judgment or obtain actual knowledge of the judgment within the first twenty days after the judgment was signed. TEX. R. CIV. P. 306a(3); TEX. R. APP. P. 4.2(a)(1). In that situation, the appellate timetables and the trial court's plenary power begin to run from the date the party or the party's attorney: (1) received notice from the clerk of the court; or (2) acquired actual knowledge of the judgment. TEX. R. CIV. P. 306a(4); TEX. R. APP. P. 4.2(a)(1). In "no event" however, may the running of the timetables begin more than ninety days after the signing of the original judgment. TEX. R. CIV. P. 306a(4); TEX. R. APP. P. 4.2(a)(1); *see Levit v. Adams*, 850 S.W.2d 469, 470 (Tex. 1993).

To take advantage of the extended timetables provided in Rule 306a(4), the party adversely affected is required to prove in the trial court, on sworn motion and notice, the date upon which the party or the party's attorney first either received notice of the judgment or acquired actual knowledge of its signing, and that this date was more than twenty days after the date the judgment was signed. *See Jarrell v. Bergdorf*, 580 S.W.3d 463, 467 (Tex. App.—Houston [14 th Dist.] 2019, no pet.); *see also Moore Landrey, L.L.P. v. Hirsh & Westheimer, P.C.*, 126 S.W.3d 536, 541 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Because the record demonstrates that the trial court's signed November 4, 2019 final summary judgment was not filed with the District Clerk's Office until November

10, 2021, the focus of this issue is on the date which the Scotts acquired actual knowledge of the signing of the final summary judgment. *See* TEX. R. CIV. P. 306a(4); *see also* TEX. R. APP. P. 4.2(a)(1).

As stated above, the trial court denied the Scotts' Rule 306a motion and concluded that they had notice of the signed judgment on November 5, 2019. The Scotts challenge the legal sufficiency of that finding. *See LDF Constr., Inc. v. Tex. Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 724 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that appellate courts have power to review trial court findings of the date a party received notice for legal and factual sufficiency); *Hot Shot Messenger Serv., Inc. v. State*, 798 S.W.2d 413, 414-15 (Tex. App.—Austin 1990, writ denied) (same). In conducting a legal-sufficiency review, we credit favorable evidence if a factfinder could reasonably do so and disregard contrary evidence unless a reasonable factfinder could not. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). A party attacking the sufficiency of an adverse finding on which it had the burden of proof at trial must demonstrate on appeal that "the record conclusively establishes all vital facts in support of the issue." *Id.*

In their Rule 306a motion, the Scotts asserted that the trial court,

> signed a final judgment on November 4, 2009[,] which was emailed to the parties on November 5, 2019. The evidence presented to this Court in this Motion demonstrates that Plaintiffs and their attorneys did not receive the notice required by Rule 306a(3) or other notice applicable under 306a. It is without question that notice was not received pursuant to Rule 306(a)(3) [sic] because, to this day, the final judgment still has not been filed with the clerk of this Court. The affidavits set forth as Exhibits A-G also establish that neither Plaintiffs nor their attorneys acquired actual knowledge of the

final judgment until January 30, 2020.  January 30, 2020 is more than twenty days since the judgment was signed and less than ninety days.

*See In re Lynd Co.*, 195 S.W.3d 682, 685 (Tex. 2006) (orig. proceeding) (noting that a sworn Rule 306a motion "establishes a prima facie case that the party lacked timely notice and invokes a trial court's otherwise-expired jurisdiction for the limited purpose of holding an evidentiary hearing to determine the date on which the party or its counsel first received notice or acquired knowledge of the judgment").  In support of their motion, the Scotts attached the affidavits of lead counsel, co-counsel, and attorneys Andrea Mehta, Gerald Villarrial, and Christie Ryan.  In addition, the Scotts also executed their own affidavits, stating that they did not acquire actual knowledge of the November 4, 2019 final summary judgment until January 30, 2020.

In their responses to the Scotts' Rule 306a motion, as well as on appeal, appellees emphasize that lead counsel acknowledged that he found an email in his inbox dated November 5, 2019, from Dunn's email account that included a PDF attachment of the trial court's signed November 4, 2019 final summary judgment.  Lead counsel recounted that this email was sent to him, co-counsel, and counsel for Domain and Aspen Heights.  Appellees argue that the Scotts and their counsel acquired actual knowledge of the November 4, 2019 final judgment when the email was sent on November 5, 2019.  Appellees complain that the Scotts should not be able to extend the appellate deadlines

simply because their counsel failed to read an email.[2]  Appellees also rely on the July 30, 2019 and September 11, 2019 letters sent by the trial court to all the parties indicating that it intended to grant appellees' motions for summary judgment as evidence that the Scotts had actual knowledge of the trial court's intent to grant the summary judgments.

By relying on the trial court's July 30, 2019 and September 11, 2019 letters that do not constitute final judgments and on the mere fact that lead counsel received, but did not read, the email from Dunn on November 5, 2019, appellees ostensibly seek to engraft constructive notice onto the discrete actual-knowledge component of Rule 306a(4).  *See* TEX. R. CIV. P. 306a(4).  Constructive notice is a "legal device" in which "a person is deemed to have actual knowledge of certain matters."  *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998).  In some circumstances, "'[a] person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records.'"  *Brown v. Arenson*, 571 S.W.3d 324, 334 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981)).  However, Rule 306a expressly provides that the post-judgment deadlines start on the date the party "acquired actual knowledge of the signing" of the judgment.  TEX. R. CIV. P. 306a(4).  It was not possible for the Scotts to acquire actual knowledge of the signed judgment by examining

---

[2] The Texas Rules of Civil Procedure contemplate electronic notices from a court.  *See* TEX. R. CIV. P. 21(f)(10) ("The clerk may send notices, orders, or other communications about the case to the party electronically.").  Our disposition of the Scotts' contention pertaining to their Rule 306a motion should not be read to mean that counsel or a party can avoid reading an email or notice from a court in an attempt to extend the appellate deadlines.  However, because it is not necessary to the disposition of this case, we make no finding as to whether Dunn is a "clerk" within the meaning of Rule 21(f)(10).  *See id.*

public records because, as mentioned above, the signed judgment was not filed with the District Clerk's Office until November 10, 2021. *See id.* at 306a(3)-(4) (providing that, when a final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail advising that the order was signed); *see also id.* at R. 306a(4) (stating that, when notice is not provided by the trial court clerk by first-class mail, the appellate deadlines do not begin until the party or his attorney acquired actual knowledge of the signed order or judgment). Moreover, we will not read a constructive knowledge component into Rule 306a without support in the plain language of the rule. *See In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007) (orig. proceeding) ("When a rule of procedure is clear and unambiguous, we construe the rule's language according to its plain or literal meaning.").

Accordingly, this case turns on the application of Rule 306a(4)—or, in other words, when the Scotts acquired actual knowledge of the trial court's signed November 4, 2019 final summary judgment. Here, the only record evidence pertaining to actual knowledge are the various affidavits executed by lead counsel, his co-counsel, and the Scotts, all stating that they did not acquire actual knowledge of the trial court's signed November 4, 2019 final summary judgment until January 30, 2020. Appellees did not present any evidence to the contrary. Therefore, reviewing the evidence under the applicable standard, we conclude that the record conclusively establishes that the Scotts and their

counsel first had actual knowledge of the trial court's signed November 4, 2019 final judgment on January 30, 2020. *See LDF Constr., Inc.*, 459 S.W.3d at 724; *see also Hot Shot Messenger Serv., Inc.*, 798 S.W.2d at 414-15. The trial court's finding to the contrary is, therefore, legally insufficient.

Based on the January 30, 2020 date that the Scotts acquired actual knowledge of the trial court's November 4, 2019 final summary judgment, the record shows that the Scotts timely filed a motion to modify judgment and a motion for new trial on February 28, 2020. *See* TEX. R. CIV. P. 329b(a). These motions served to extend the deadline for filing a notice of appeal to within ninety days of January 30, 2020. *See* TEX. R. APP. P. 26.1(a). The Scotts filed their notice of appeal in this matter on April 28, 2020. Pursuant to Texas Rule of Appellate Procedure 26.1(a), the Scotts successfully invoked our appellate jurisdiction to review the merits of their claims pertaining to the trial court's granting of summary judgment in favor of appellees. *See id.*; *see also Tex. Entm't Ass'n v. Combs*, 431 S.W.3d 790, 796 (Tex. App.—Austin 2014, pet. denied) ("Timely filing a notice of appeal is necessary to invoke this Court's appellate jurisdiction[.]"). Thus, we sustain the Scotts' first issue in their direct appeal.

In their second issue, the Scotts complain about the trial court's failure to make a finding under Texas Rule of Appellate Procedure 4.2(c) as to the date they acquired actual knowledge of the trial court's signed November 4, 2019 final judgment. Because the trial court has now made a finding under Texas Rule of Appellate Procedure 4.2(c), this issue

is moot.  *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005) ("A case become moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome.").  As such, we dismiss the Scotts' second issue.

## The Trial Court's Final Summary Judgment

In their third issue, the Scotts contend that the trial court erred when it granted summary judgment in favor of appellees.  Specifically, the Scotts assert that:  (1) appellees failed to establish entitlement to judgment as a matter of law; (2) there is a material fact issue regarding the character of the nuisance maintained by Domain as either temporary or permanent; and (3) limitations is not a defense because appellees' actions constitute a continuing nuisance and continuing tort.

STANDARD OF REVIEW

We review a trial court's summary judgment, both traditional and no-evidence, de novo.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Strandberg v. Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex. App.—San Antonio 2009, no pet.).  When a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion.  *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017).  Any claims that survive the no-evidence review are then reviewed under the traditional standard.  *Id.* at 219-20.

A no-evidence motion for summary judgment is essentially a motion for pretrial directed verdict.  *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006); *see Humphrey*

*v. Pelican Isle Owners Ass'n*, 238 S.W.3d 811, 813 (Tex. App.—Waco 2007, no pet.). Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Tamez*, 206 S.W.3d at 582. The nonmovant must produce "summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenge element is produced. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* (quoting *Merrell Dow Pharms., Inc. v Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). On the other hand, the evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion." *Id.* When determining if more than a scintilla of evidence has been produced, the evidence must be viewed in the light most favorable to the nonmovant. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). The movant carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).

The nonmovant has no burden to respond to a summary-judgment motion unless the movant conclusively establishes its cause of action or defense. *Willrich*, 28 S.W.3d at 23. However, once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden shifts to the nonmovant to present evidence sufficient to raise a fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). In reviewing a traditional summary judgment, we must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Mayes*, 236 S.W.3d at 756.

DISCUSSION

The Scotts own and operate a storage facility located at 3403 South University Parks Drive in Waco, Texas. In 2010, Aspen built an apartment complex on land either adjoining or near to land owned by the Scotts. Domain built an apartment complex on land adjoining or near to land owned by the Scotts in 2014. In their third amended original petition, the Scotts alleged the following regarding the apartment complexes built by Aspen and Domain:

> The acts of Defendants, since the completion of physical improvements and continuing thereafter during periodic and intermittent rainfall events, have during rainfall events diverted and still divert water from Defendants' respective properties and onto Plaintiff's property. Taken both separately and collectively, Defendants' actions increased and alter the direction, quantity and rate at which the water flows from their properties onto Plaintiffs' property. These actions include alteration and maintenance of alterations in the surface area of the real property, including construction

and maintenance of physical improvements on the real property which act to divert and impound the natural flow of water. Water discharged from Defendants' properties is accelerated, concentrated and diverted from its natural flow pattern by the apartment house developments and parking and by non-functioning attempts at impoundment. The resulting flow proximately causes damages to Plaintiffs' property. Further, the resulting flow is unpredictable and irregular; the flooding caused by Defendants' properties varies with the number and force of rain events in any given time period. To date, Defendants have not taken actions to adequately address the problem and, indeed, at times have taken actions to exacerbate the problem. The offence resulting from Defendants' properties is continuing and repeated.

Based on these facts, the Scotts alleged claims against Domain and Aspen for violations of section 11.086 of the Texas Water Code, trespass, negligence, and nuisance.

Domain filed a no-evidence motion for summary judgment as to the Scotts' negligence claim and a traditional motion for summary judgment as to the Scotts' remaining claims, asserting entitlement to judgment as a matter of law on limitations grounds. Aspen filed a traditional motion for summary judgment asserting entitlement to judgment as a matter of law as to all the Scotts' claims on limitations grounds.

After a hearing, the trial court signed an order on July 24, 2019, granting Domain's no-evidence motion for summary judgment only as to the Scotts' negligence claim. Thereafter, in its final summary judgment signed on November 4, 2019, the trial court granted both Domain and Aspen's traditional motions for summary judgment on limitations grounds. The trial court ordered that the Scotts take nothing on their Water Code claims, nuisance claims, trespass claims, request for injunctive relief, and any other claim asserted in their third amended original petition.

On appeal, the Scotts contend that the trial court erred when it granted summary judgment in favor of appellees on limitations grounds as to the Scotts' nuisance, trespass, and Water Code claims. We agree.

Trespass, nuisance, and Texas Water Code claims are governed by a two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) ("[A] person must bring suit for trespass for injury to the estate or to the property of another . . . not later than two years after the day the cause of action accrues."); *see also Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004) (applying the two-year limitations period of section 16.003 to a nuisance claim); *Graham v. Pirkey*, 212 S.W.3d 507, 512 (Tex. App.—Austin 2006, no pet.) (applying the two-year limitations period of section 16.003 to Texas Water Code claims). Accrual of limitations is a question of law for the court, but "material factual disputes about frequency, duration, and extent of nuisance conditions" are questions for the factfinder. *Bates*, 147 S.W.3d at 274-75.

Accrual of the Scotts' claims depends on whether the alleged flooding is properly characterized as a permanent or temporary nuisance. *Id.* at 270. Under Texas law, a nuisance is permanent if it "involves an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely." *Id.* at 272. Therefore, a nuisance is permanent if it is "constant and continuous" and if "injury constantly and regularly occurs." *Id.* On the other hand, a temporary nuisance is of limited duration. *Id.* A nuisance may be considered temporary if it is uncertain whether

any future injury will occur or if future injury "is liable to occur only at long intervals." *Id.* A nuisance is also temporary if it is "occasional, intermittent or recurrent" or "sporadic and contingent upon some irregular force such as rain." *Id.*

"[A] nuisance should be deemed temporary only if it is so irregular or intermittent over the period leading up to filing and trial that future injury cannot be estimated with reasonable certainty. Conversely, a nuisance should be deemed permanent if it is sufficiently constant or regular (no matter how long between occurrences) that future impact can be reasonably evaluated." *Id.* at 281. Whether a nuisance is permanent or temporary is a question of law unless there is a dispute regarding what interference has occurred or whether it is likely to continue. *See id.*

As mentioned above, in their third amended original petition, the Scotts alleged that appellees' physical improvements have, "during periodic and intermittent rainfall events," caused the diversion and impoundment of the natural flow of water, resulting in flooding on the Scotts' property. The Scotts further alleged that the "offence resulting from Defendants' properties is continuing and repeated." In their responses to appellees' summary-judgment motions, the Scotts included numerous pictures of their property after significant rainfall events and affidavits from Terry Scott and R.E. ("Bob") Wallace, a professional engineer and registered professional land surveyor. Terry noted that the flooding began when Aspen and Domain built their apartment complexes near his property in 2010 and 2014, respectively. Terry further alleged that:

[E]ven regular rain events cause the parking lot at 3403 South University Park Drive to accumulate and hold water. The excess water on the property makes ingress and egress difficult for myself and customers, impossible in some areas. . . . The water accumulation also deteriorates the existing surface of the land. Because of the accumulation of water during rainfall, the areas impacted cannot be used even when the property is dry in the event a subsequent rain will cause accumulation of water in those areas and damage property on those areas.

. . .

Neither defendant has made any meaningful attempt to remedy the problem. Because it is essential for my business that the storage units on the 3403 South University Park Drive property do no receive excess waters, I have had to rent water pumps to curtail the accumulation of water. . . . I had to rent water pumps after Defendant Aspen Heights Waco Project LTD completed its apartment complex, but since the S2S Domain project was completed, the frequency at which I have had to rent and operate the pumps has significantly increased in frequency. . . . After the recent January 2019 rainfall, I even had to rent a second water pump, because one was not sufficient to keep the water from entering my clients' storage units.

The last event in January 2019 required me to be on the property nonstop four days and four nights in order to pump water away from the units. An estimate of the volume of water pumped off the property was 1.37 million gallons of water. The water issues are increasing in severity because of Defendants' noncompliance and refusal to remedy these issues.

. . .

Even though I have to be on guard during rainy days, I can't predict when overflow from rainfall is going to happen. I will typically go out at 2 or 3 in the morning to check and make sure no flooding occurs. On days where there is significant rainfall, I have had to be out there constantly for several days and pump the water so it does not flood the storage units. While overflow by water from Defendants' property can be known to occur in each sufficient rainfall event, those events cannot be predicted as to any particular date, as such rainfall is unpredictable until immediately in advance and sporadic.

Wallace recognized that both the "Aspen Heights and Domain properties are higher elevation than the Scott property" and that despite being required to do so, neither Aspen nor Domain built a proper detention pond to control and regulate the flow of water. Wallace also described the topography of the properties and explained why the Scotts' property is regularly flooded when there is a significant rainfall event. He further noted that:

> During long periods of time when there is no or insufficient rainfall[,] there is no drainage concern or problem. Certain rainfall events cause severe flooding of the Scott property due to water diverted . . . . Predicting when this will occur actually is impossible without prior knowledge of specific weather patterns and rainfall amounts, which itself is impossible.

As described above, the summary-judgment evidence demonstrates that the flooding on the Scotts' property is caused by intermittent rainfall and future injury cannot be estimated with reasonable certainty. *See id.* at 272, 281. As such, the determination of whether the injury to the Scotts' property is temporary or permanent in nature is a fact question. Accordingly, based on the evidence presented, the Scotts' temporary-nuisance claim accrues anew upon each injury. *Id.* at 270. Therefore, claims for injuries occurring within two years of suit are timely. *See id.*

In the instant case, the Scotts filed their third amended original petition on March 14, 2019. Moreover, in his affidavit, which was also attached to Domain's second amended traditional motion for summary judgment, Terry specifically states that the most recent flooding occurred after a rainfall event in January 2019. Based on the Scotts'

live pleading and the summary-judgment evidence showing that the Scott's temporary-nuisance claim last occurred within two years of their live pleading, we conclude that the trial court erred by concluding that the Scotts' temporary-nuisance claim was barred by limitations.

Regarding the Scotts' claim for trespass, we note that, like a nuisance claim, when the two-year period begins to accrue depends on whether the trespass was temporary or permanent in character. *See Bates*, 147 S.W.3d at 274-75; *see also* TEX. PRAC. & REM. CODE ANN. § 16.003; *Waddy v. City of Houston*, 834 S.W.2d 97, 102 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (stating that an action for trespass for permanent injuries to land accrues upon the discovery of the first actionable injury). Our determination that the Scotts' nuisance claims involved temporary damage to their property necessarily requires the same conclusion with respect to their trespass claim. *See id.*; *Graham*, 212 S.W.3d at 512; *see also Pope v. John Kiella Homes*, No. 07-06-0146-CV, 2008 Tex. App. LEXIS 3128, at *11 (Tex. App.—Amarillo, no pet.) (mem. op.). Thus, we conclude that the Scotts brought their trespass claim within the two-year limitations period prescribed by section 16.003(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). And as such, the trial court erred by granting summary judgment on limitations grounds as to the Scotts' trespass claim.

Moreover, as noted above, courts also have applied a two-year statute of limitations to claims for damages under section 11.086 of the Texas Water Code. *Graham*,

212 S.W.3d at 512. No contention is made that the claim for damages under that statute asserted in this case accrued at any earlier date than the nuisance or trespass claims. Accordingly, we conclude that the Scotts brought their Texas Water Code claim within the two-year limitations period. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). We further conclude the trial court erred by granting summary judgment on limitations grounds as to the Scotts' claim for violations of the Texas Water Code.

Regarding their negligence claim, the Scotts do not complain about the trial court's ruling in their appellants' brief. Because the Scotts do not challenge this ground for summary judgment, we cannot say that the trial court erred in granting summary judgment in favor of appellees as to the Scotts' negligence claim. *See Krueger v. Atascosa County*, 155 S.W.3d 614, 621 (Tex. App.—San Antonio 2004, no pet.) ("Unless an appellant has specifically challenged every possible ground for summary judgment, the appellate court need not review the merits of the challenged ground and may affirm on an unchallenged ground."). We sustain the Scotts' third issue, in part.

**The Scott's Petition for Writ of Mandamus**

In their petition for writ of mandamus in appellate cause number 10-20-00145-CV, the Scotts challenge the trial court's ruling on their Rule 306a motion and they seek to compel the trial court to make a finding as to the date they acquired actual knowledge of the trial court's signed November 4, 2019 final summary judgment under Texas Rule of Appellate Procedure 4.2(c). Because we have already addressed the trial court's ruling

on the Rule 306a motion in appellate cause number 10-20-00133-CV, and because the trial court has now made a finding under Texas Rule of Appellate Procedure 4.2(c), we dismiss the Scotts' petition for writ of mandamus in appellate cause number 10-20-00145-CV as moot.

## Conclusion

Based on the foregoing, in appellate cause number 10-20-00133-CV, we reverse the trial court's November 4, 2019 final summary judgment and remand for proceedings consistent with this opinion. Furthermore, in appellate cause number 10-20-00145-CV, we dismiss the Scotts' petition for writ of mandamus as moot.


MATT JOHNSON
Justice

Before Chief Justice Gray,
     Justice Johnson,
     and Visiting Justice Wright[3]
Reversed and remanded and petition dismissed
Opinion delivered and filed December 1, 2021
[CV06]



---

[3] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.