**Mandamus relief conditionally granted and opinion entered November 25, 2024**



## In The
## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-01246-CV

## IN RE BUILDERS FIRSTSOURCE, INC., BUILDERS FIRSTSOURCE-DALLAS, LLC, AND BUILDERS FIRSTSOURCE-SOUTH TEXAS, LP, Relators

**Original Proceeding from the County Court at Law No. 2
Dallas County, Texas
Trial Court Cause No. CC-22-01477-B**

## MEMORANDUM OPINION
Before Justices Pedersen, III, Nowell, and Miskel
Opinion by Justice Pedersen, III

In this original proceeding, relators argue the trial court clearly abused its discretion by (1) failing to grant their supplemental motion to reconsider and supplemental motion to stay and to compel arbitration and (2) ordering that a jury determine whether a valid arbitration agreement exists. Additionally, they argue they have no adequate remedy by appeal. We conditionally grant mandamus relief.

## Background

Real party in interest Deshawn White alleges in the underlying lawsuit that he suffered a workplace injury. Prior to the alleged injury, White signed a new-employee document titled "Receipt, Safety Pledge and Dispute Resolution Acknowledgement" (acknowledgment). It contained arbitration provisions. Moreover, it referred to another document and to the other document's additional arbitration provisions.

White filed the underlying lawsuit against relators and others. White alleges he was an employee of "Defendants Builders FirstSource Dallas and/or Builders FirstSource South Texas," two of the relators herein, when he was injured. He alleges the location at which he was injured was operated by "Defendants Builders FirstSource, Builders FirstSource Dallas, and/or Builders FirstSource South Texas" (relators). Against Builders FirstSource Dallas "and/or" Builders FirstSource South Texas, White alleges claims for respondeat superior, vicarious liability, negligent supervision, and negligent training. Against all relators, he alleges claims for premises liability, joint enterprise, and gross negligence.[1]

Relators moved to stay litigation and to compel arbitration pursuant to the Federal Arbitration Act (FAA). *See* 9 U.S.C. §§ 1–16. They argued (1) the FAA

---

[1] Additionally, White sued two "John Doe" defendants. Against "John Doe #1," he alleged claims of negligence and gross negligence. Against "John Doe #2," he alleged claims of negligence, negligent supervision, negligent training, and gross negligence. The mandamus record contains no evidence that either John Doe was identified, served with process, or otherwise appeared in this lawsuit.

applies in this lawsuit, (2) a written arbitration agreement exists, (3) the arbitration agreement covers White's alleged claims, and (4) the agreement involves interstate commerce.

Relators attached a copy of the "Builders FirstSource Injury Benefit Plan" (plan) to their motion. The plan consists of (1) a "Summary Plan Description" (SPD), (2) "Appendix A" of the SPD, titled "Arbitration of Certain Injury-Related Disputes" (the SPD's arbitration policy), and (3) "Appendix D" of the SPD, an unsigned copy of the above-mentioned acknowledgment.[2] The SPD's table of contents includes the arbitration policy and acknowledgment as part of the SPD. The SPD's arbitration policy states, "**This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute**."[3] It provides, "Except as provided in this Policy, the Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings under the arbitration provisions of this Policy." It states, "Any arbitration under this Policy will be administered by the American Arbitration Association ("AAA") under its then-current Employment Arbitration Rules and Mediation Procedures." The acknowledgment states that (1) its signatory received and read (or had the opportunity to read) the SPD, (2) a

---

[2] The mandamus record contains two copies of the acknowledgment. One copy of the acknowledgment, attached to the SPD as an appendix, is unsigned. Another copy, not attached to the SPD, is signed by White. The acknowledgments are substantively identical.

[3] This opinion contains boldface type and capitalized letters as those typographical features appear in the documents contained in the mandamus record.

mandatory employment policy is attached thereto, (3) the policy requires that unresolved claims relating to an on-the-job injury must be submitted to an arbitrator, rather than a judge and jury in court, (4) its signatory accepts and agrees to comply with the SPD's arbitration policy's arbitration requirements, and (5) "**I understand that the arbitrator, and not a judge or jury, has the exclusive authority to resolve any dispute about the enforceability of this arbitration process**."

Subsequently, White filed a motion for jury determination on the issue of whether a valid arbitration agreement exists. In that motion, White argued, "If a party objects to the formation of an agreement to arbitrate, this Court must decide the issue of arbitrability between the parties." He argued that the trial court should submit to a jury the issue of whether the SPD's arbitration policy, the acknowledgment, or any other alleged agreement is a valid and enforceable agreement to arbitrate. He cited judicial authority that construed § 4 of the FAA. *See* 9 U.S.C. § 4. Additionally, White filed a response to relators' motion. In that response, White argued, "Because the only document Plaintiff White is purported to have signed was the Separate Acknowledgment, there was no meeting of the minds between the parties as to the contents of the Arbitration policy . . . ." Additionally, he argued, "[J]ust because [White] may have known there was apparently mandatory arbitration, there is no evidence [he] had reasonable notice

of the terms of the Arbitration Policy or agreed to such terms, meaning there was no meeting of the minds." Moreover, he argued, "[E]ven if [White] did see and review the Arbitration Policy, he would not have received notice of the arbitration rules because [relators] did not provide a link or notice to what the 'then-current [AAA] Employment Rules' were."

After a hearing, the trial court signed a July 8, 2022 order denying relators' motion to stay litigation and to compel arbitration. In that same order, the trial court granted White's motion for jury trial on whether a valid arbitration agreement existed and set a date for the jury proceeding.

Relators filed a notice of appeal from the trial court's order. However, this Court dismissed the appeal for want of jurisdiction. *See Builders FirstSource, Inc. v. White*, No. 05-22-00724-CV, 2023 WL 2674083, at *2 (Tex. App.—Dallas Mar. 29, 2023, no pet.) (mem. op.). This Court decided the FAA did not authorize interlocutory appeal of the trial court's order because the order (1) denied the motion to stay litigation and compel arbitration and (2) granted the motion for jury trial on the issue of whether a valid arbitration agreement exists and set a date for jury trial. *See id.* This Court concluded the order effectively deferred a final ruling on whether to grant arbitration and therefore was not reviewable. *See id.*

However, less than a month after this Court issued its opinion, the supreme court issued its opinion, *TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*,

667 S.W.3d 694 (Tex. 2023). That opinion addressed an issue that White had raised earlier in the trial court—that even if he had reviewed the SPD's arbitration policy, he would not have received notice of the arbitration rules because relators did not provide a link or notice to the AAA employment rules. In *TotalEnergies E&P USA, Inc.*, an arbitration provision stated that arbitration must be conducted in accordance with the rules of the AAA and that the arbitration proceedings shall be in accordance with the commercial rules of the AAA. *See id.* at 709. The supreme court held, "By this language, the parties incorporated the AAA rules into their arbitration agreement, and thus the rules are binding, at least absent any conflict between the two." *Id.* Additionally, the supreme court concluded the incorporated rules clearly and unmistakably demonstrated the parties' intent to delegate arbitrability issues to the arbitrator. *See id.* at 712.

About a month after the supreme court issued *TotalEnergies E&P USA, Inc.*, relators filed "defendants' motion to reconsider and supplemental motion to stay and compel arbitration" in the trial court. Relators argued the parties clearly and unmistakably delegated to the arbitrator the power to decide objections related to the existence, scope, and validity of the arbitration agreement. Relators relied on and extensively quoted *TotalEnergies E&P USA, Inc.*[4] White again moved for jury

---

[4] Relators argued in a trial-court hearing that *TotalEnergies E&P USA, Inc.* provides that a valid arbitration agreement exists in this case "as a matter of law." White argued, "Here, the Court has not determined whether there's a valid and enforceable Arbitration Agreement yet, and that's what the jury is for."

trial and responded to relators' motions. He relied on arguments previously made in his earlier motion and response. Subsequently, relators filed "defendants' supplemental motion to reconsider and supplemental motion to stay and compel arbitration" with declarations authenticating documents. In response, White filed a letter brief with the trial court stating he relied on his previous response.

The trial court held a hearing on relators' supplemental motions but did not rule from the bench. The parties filed additional letter briefs in the trial court. The trial court signed a November 2, 2023 order denying relators' supplemental motion to reconsider and supplemental motion to stay and compel arbitration.

Relators filed a notice of accelerated appeal from the November 2, 2023 order and filed a petition for writ of mandamus in this Court. Because it was not clear if the trial court had indeed denied the motion to compel arbitration, which would be an appealable interlocutory order, *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.016; 171.098(a)(1), we ordered the trial court to clarify its ruling and abated the appeal. The trial court signed a clarifying order on January 10, 2024. In the order, the trial court stated:

> The Court has not definitely denied the motion to compel arbitration. This matter is set for a jury trial on April 4, 2024 for the purpose of determining whether any or all claims are subject to arbitration.

In light of the trial court's clarifying order, this Court questioned its jurisdiction over the appeal and ordered appellants (relators herein) to file either a motion to

dismiss or a letter brief explaining how this Court had jurisdiction over the appeal. Relators filed an unopposed motion to dismiss their interlocutory appeal, which this Court granted. Relators also filed an emergency motion to stay all trial court proceedings. This Court stayed all trial court proceedings pending resolution of this mandamus proceeding or further order from this Court and requested responsive briefing.

## Standard of Review and Applicable Law

Mandamus relief is appropriate only if a trial court clearly abuses its discretion and no adequate appellate remedy exists. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875 (Tex. 2021) (orig. proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

The trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding). However, if the material facts necessary to determine the issue are controverted, by an opposing

affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts. *See id.*

We review a trial court's decision granting or denying a motion to compel arbitration for abuse of discretion. *See Caire v. Genetic Direction LLC*, No. 05-19-00151-CV, 2020 WL 1615683, at *3 (Tex. App.—Dallas Apr. 2, 2020, no pet.) (mem. op.). Under the FAA, a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement. *See Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 376 (Tex. 2023).

A party cannot be forced to arbitrate absent a binding agreement to do so. *See Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 632 (Tex. 2018). Therefore, courts must first decide whether a valid arbitration agreement exists. *See TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 720. Under the FAA, ordinary principles of state contract law determine whether a valid agreement to arbitrate exists. *See In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding). We may not expand upon the terms of the contract or tolerate liberal interpretation of the contract by reading into it a voluntary agreement to arbitrate when one does not exist. *See Aldridge v. Thrift Fin. Mktg., LLC*, 376 S.W.3d 877, 883 (Tex. App.—Fort Worth 2012, no pet.). The plain meaning of the contractual language must clearly indicate the intent to arbitrate. *See id.* There is a presumption favoring

agreements to arbitrate under the FAA, but the presumption only arises after the party seeking to compel arbitration proves a valid arbitration agreement exists. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737–38 (Tex. 2005) (orig. proceeding). If the party seeking arbitration meets its burden to establish the agreement's validity, then the burden shifts to the party opposing arbitration to raise a valid defense to the agreement's enforcement. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

The determination of whether the arbitration agreement imposes a duty to arbitrate the claims in a particular dispute is a matter of contract interpretation. *See Jabri v. Qaddura*, 108 S.W.3d 404, 410 (Tex. App.—Fort Worth 2003, no pet.). If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *See id.* at 411. A trial court's determinations of whether a valid arbitration agreement exists and whether the claims fall within the scope of an arbitration agreement are legal determinations subject to de novo review. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227. "Gateway matters"—such as whether a valid contract exists—are questions of law that we review de novo. *See Lennar Homes of Tex. Land & Constr., Ltd.*, 672 S.W.3d at 376. The court's primary concern in construing the contract is to ascertain the intent of the parties as expressed in the contract. *See J.M. Davidson, Inc.*, 128 S.W.3d at 229.

Section 2 of the FAA provides, "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. Under § 4 of the FAA, a party aggrieved by the failure of another party "to arbitrate under a written agreement for arbitration" may petition the court "for an order directing that such arbitration proceed in the manner provided in such agreement." *Id.* § 4. Section 4 of the FAA provides that if a party to an arbitration agreement fails to arbitrate claims, "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* Section 3 of the FAA provides that the court "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." *Id.* § 3.

## The Order for Jury Determination

Relators argue the trial court abused its discretion by ordering and setting a jury proceeding on the issue of whether a valid arbitration contract exists. White

–11–

does not argue that the documents are ambiguous.[5] He argued in the trial court that the documents themselves raised a fact issue on notice and meeting of the minds because the signed acknowledgment was not attached to the SPD's arbitration policy. He referred to *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). However, *Morgan* is inapposite in the present lawsuit. *Morgan* held the FAA did not authorize courts to "make up" the rule that "[a] party can waive its arbitration right by litigating only when its conduct has prejudiced the other side." *Id.* at 414–15, 419.

Additionally, White argued in the trial court that he need not introduce evidence in order to obtain a jury trial on whether a valid arbitration agreement exists. However, White was not entitled to a jury determination pursuant to § 4 of the FAA or pursuant to Texas law because he failed to produce evidence to raise a fact issue of whether a valid arbitration agreement exists.

Section 4 of the FAA in part provides,

> If the making of the arbitration agreement . . . *be in issue*, the court shall proceed summarily to the trial therefor. . . . *Where such an issue is raised*, the party alleged to be in default may . . . demand a jury trial of such an issue . . . .

---

[5] When a contract's language is unambiguous, courts must construe the contract as a matter of law. *See First Bank v. Brumitt*, 519 S.W.3d 95, 105 (Tex. 2017). And whether the contract is ambiguous is itself a question of law for the court to decide. *See id.*

9 U.S.C. § 4 (emphases added). Additionally, federal case law recognizes that § 4 requires more than a simple jury demand to authorize a jury determination on the making of an arbitration agreement. The Fifth Circuit has stated,

> A party to an arbitration agreement cannot obtain a jury trial merely by demanding one. The party resisting arbitration bears "the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act." Our caselaw [sic] has not established the precise showing a party must make. We have, however, suggested that the party must make at least some showing that under prevailing law, he would be relieved of his contractual arbitration if his allegations proved to be true. In addition, he must produce at least some evidence to substantiate his factual allegations.

*Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) (citations and footnote omitted); *see also Soni v. Solera Holdings, L.L.C.*, No. 21-10428, 2022 WL 1402046, at *3 (5th Cir. May 4, 2022) ("The 'some showing' standard requires: unequivocally denying entering the contract . . . and producing evidence sufficient to substantiate that allegation."); *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002) ("Other than their self-serving affidavits, Appellants have not submitted a whisper of evidence to support the conclusion that a jury trial is warranted under § 4 of the FAA."). Indeed, in the trial court, White's counsel relied on judicial authority that recognized the need to make an evidentiary showing in order to obtain a jury trial pursuant to § 4 of the FAA. Counsel paraphrased a judicial opinion as stating, "However, the plaintiff provided evidence he never saw the arbitration agreement and that the defendant-

employer fraudulently signed the plaintiff's name on the agreement. Because the plaintiff raised 'fact issues' that called 'into question the validity of the arbitration agreement between the parties,' the trial court granted plaintiff's motion and set a jury trial on the issues." *See Acosta v. Odle Mgmt. Grp.*, *LLC*, No. EP-19-CV-265-PRM, 2020 WL 1060782, at *3–4 (W.D. Tex. July 20, 2020) (citations omitted).

Rather than produce evidence in a hearing in the court below, White's counsel instead confirmed the trial court's statement that it had no evidence before it on the issue of whether White received or understood the SPD and its arbitration policy. White's counsel argued,

> Right. And you don't. And our argument is that it's unnecessary, at this point, because we're getting in the weeds of the factual issue that the jury would decide. Henry v. Cash Biz, LP, El Paso case we cite in our response, gives the Court the authority to order a fact issue on an unsigned arbitration agreement when one side objects like we have. So, you know—we can get into the weeds all we want, but that's not—this hearing—the Court doesn't have the affidavits and the evidence to decide the fact issue, and we moved for a jury trial on that fact issue that the Court has very, kind of concisely, pointed out, which is that we have an unsigned agreement and we have a signed acknowledgment that is sufficient for to bind the parties on a meeting of the minds of the terms of the agreement in the SPD . . . .

Counsel's mere argument is insufficient to obtain a jury determination under § 4 of the FAA, *Dillard*, *Soni*, *American Heritage Life Insurance Co.*, and *Acosta*, cited above. Therefore, the trial court was not authorized by § 4 of the FAA or by related case law to order a jury trial on the issue of whether a valid arbitration agreement existed, and it clearly abused its discretion by doing so.

Moreover, the Texas Supreme Court has stated,

> [W]e hold that the trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. However, *if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence,* the trial court must conduct an evidentiary hearing to determine the disputed material facts.

*Jack B. Anglin Co., Inc.*, 842 S.W.2d at 269 (emphasis added.)

Put simply, White sues as relators' employee and seeks to hold relator liable on that very basis: respondeat superior, negligent supervision, negligent training, etc. White does not deny that his signature appears on his employment documents, including a document incorporating all the other employment documents by reference. White demands all the rights and privileges of being relators' employee, but he seeks to avoid the requirement that all disputes between White and relators be resolved through arbitration. That relief is simply unavailable in Texas. If White denied he was an employee, or asserted that his signature was procured through fraud, or some defense to or attack on the entire transaction that forms the entire basis of his lawsuit, then perhaps a jury might have a factual dispute to resolve. No such dispute is present in this record. White seeks to have his cake, and eat it too.

Because White failed to introduce evidence to controvert the existence of a valid arbitration agreement, we conclude the trial court clearly abused its discretion

in ordering a jury determination of that issue. *See Jack B. Anglin Co.*, 842 S.W.2d at 271 (failure to correctly apply the FAA amounts to a clear abuse of discretion).[6]

## **Motion to Stay and Compel**

### The Parties' Arguments and Our Analytical Framework

Relators argue (1) they proved the existence of a valid arbitration agreement, (2) they proved White's claims fall within the scope of that agreement, and (3) the agreement involves interstate commerce.[7] Moreover, they argue the agreement clearly and unmistakably provides that the arbitrator, rather than a jury, must determine whether a valid arbitration agreement exists. Therefore, they argue, the trial court clearly abused its discretion by denying their supplemental motion to reconsider and their supplemental motion to compel arbitration and stay litigation.

In response, White argues there was no meeting of the minds as is required to form a valid arbitration agreement.[8] He argues the signed acknowledgment is

---

[6] Moreover, we decide below that relators carried their burden to establish the existence of a valid arbitration agreement. We base that decision on documents—the SPD, the SPD's arbitration policy, and the signed acknowledgement. We reach that decision as a matter of law. Consequently, we disagree with White's argument that the documents themselves raise a fact issue of whether a valid arbitration agreement exists. Here, the trial court ordered jury determination of a question of law. It is axiomatic that juries decide fact questions, and courts decide law questions. See Scherer v. Tex. Coast Yachts, LLC, No. 01-20-00412-CV, 2022 WL 2251816, at *14 (Tex. App.—Houston [1st Dist.] June 23, 2022, no pet.) (mem. op.) (citing Chitsey v. Nat'l Lloyds Ins. Co., 738 S.W.2d 641, 643 (Tex. 1987) ("A jury's role is to decide matters of fact and not matters of law.")).

[7] When, as here, the parties agree to arbitrate under the FAA, they are not required to establish that the transaction at issue involves or affects interstate commerce. *See In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding).

[8] "The elements required for the formation of a valid contract" include "a meeting of the minds." *Shackelford, Bowen, McKinley & Norton, LLP v. Peters*, No. 05-23-00454-CV, 2024 WL 3218223, at *4 n.1 (Tex. App.—Dallas June 28, 2024, pet. abated) (mem. op.).

not attached to the SPD, which raises a fact issue of whether he actually received the SPD and had notice of its arbitration provisions. Moreover, he argues the trial court did not abuse its discretion by granting his motion for jury determination of whether a valid arbitration agreement exists.

The Supreme Court has provided the framework of our analysis in this case as follows,

> To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. *See* 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.

*Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. 63, 69 (2019). Accordingly, we first address whether relators carried their burden to prove a valid arbitration agreement exists. We then decide whether the agreement clearly and unmistakably delegates the issue of whether there is an enforceable arbitration agreement to the arbitrator for ultimate decision.

<u>Existence of a Valid Arbitration Agreement</u>

Relators argue they carried their initial burden to prove the existence of a valid arbitration agreement. *See Lennar Homes of Tex. Land & Constr., Ltd.*, 672 S.W.3d at 376 (stating FAA burdens).

We begin our analysis with the signed acknowledgment that was not attached to the SPD. It contains words of agreement and in part provides,

**RECEIPT OF MATERIALS.** By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the Summary Plan Description (the "SPD") for the Builders FirstSource Injury Benefit Plan, updated effective December 17, 2016.

\* \* \*

**ARBITRATION.** I also acknowledge that a mandatory employment policy is attached as an Appendix to the SPD for convenience of reference. This policy requires that **claims or disputes that (1) are covered under this employment policy, (2) cannot otherwise be resolved between the Employer and me, and (3) relate to an actual or alleged on-the-job injury must be submitted to an arbitrator** rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Employer at any time on or after December 17, 2016, I am accepting and agreeing to comply with these arbitration requirements.

Relators cite *In re Bank One, N.A.*, 216 S.W.3d 825 (Tex. 2007) (orig. proceeding) (per curiam). That opinion, like this one, involved a separate, unsigned arbitration document. The supreme court stated,

> The arbitration agreement in this case was incorporated by reference on the account signature card signed by J&S Air's representatives. Signature cards are valid contracts under Texas law. *Am. Airlines Employees Fed. Credit Union v. Martin*, 29 S.W.3d 86, 96 (Tex. 2000). Documents incorporated by reference in the signature card are part of the contract. *See Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968); *Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex. App.—Austin 2001, pet. denied). The signature card here incorporated by reference the arbitration agreement, stating "[t]he Customer acknowledges receipt of the Bank's Account Rules and Regulations including all applicable inserts and agrees to be bound by the agreements and terms contained therein." We presume that "a party who signs a contract knows its contents." *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996); *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134 (Tex. 2004). Therefore, the arbitration agreement is valid.

*In re Bank One, N.A.*, 216 S.W.3d at 826; *see In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) (orig. proceeding) (per curiam) ("A party who signs an agreement is presumed to know its contents. That includes documents specifically incorporated by reference.") (citing *In re Bank One, N.A.*, 216 S.W.3d at 826). Moreover, the supreme court has stated,

> Innumerable contracts are consummated every day in Texas that incorporate other documents by reference. A contractual term is not rendered invalid merely because it exists in a document incorporated by reference, *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968), and we agree with the courts of appeals that arbitration-related language is no exception to this rule. *See, e.g., Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex. App.—Austin 2001, pet. denied) (holding that an unsigned arbitration agreement contained in a document incorporated by reference into the signed contract constitutes an enforceable arbitration agreement); *D. Wilson Constr. Co. v. McAllen Indep. Sch. Dist.*, 848 S.W.2d 226, 230 (Tex. App.—Corpus Christi 1992, writ dism'd w.o.j.) (rejecting the argument that an arbitration agreement incorporated by reference is invalid or unenforceable).

*In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding); *see also LDF Constr., Inc. v. Tex. Friends of Chabad Lubavitch, Inc.*, 459 S.W.3d 720, 728 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

White does not attempt to distinguish *In re Bank One, N.A.* Indeed, we see no material distinction between the language of the signature card in *In re Bank One, N.A.* and that of the signed acknowledgment in this case. Moreover, White does not contend he failed to read the signed acknowledgment. Additionally, he concedes in this Court he signed the unattached acknowledgment. Consequently,

we conclude the signed acknowledgment "incorporated by reference" the attached SPD and its arbitration policy and that White is charged with knowledge thereof. *See In re D. Wilson Const. Co.*, 196 S.W.3d at 781; *In re Bank One, N.A.*, 216 S.W.3d 826.

The incorporated SPD's arbitration policy in part provides,

The Employer hereby adopts a mandatory company policy requiring that certain claims or disputes must be submitted to final and binding arbitration under this arbitration requirement ("Policy"). **This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.**

\* \* \*

**Covered claims:** . . . any legal or equitable claim or dispute relating to enforcement or interpretation of the arbitration provisions in a Receipt, Safety Pledge and Dispute Resolution Acknowledgement form, an Employee training program, or this Policy . . . .

[A]ny legal or equitable claim by or with respect to an Employee for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma . . . .

The determination of whether a claim is covered by this Policy.

\* \* \*

**Covered Parties:** Neither an Employee nor an Employer shall be entitled to a bench or jury trial on any claim covered by this Policy.

\* \* \*

**Arbitrator Authority:** The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement including, but not limited to, any claim that all or any part of this agreement is void or voidable.

Generally, "a written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . 'allege[s] *and prove[s]* that the arbitration

–20–

clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract.'" *J.B. Hunt Transp., Inc. v. Lester*, No. 02-23-00035-CV, 2023 WL 3876758, at \*4 (Tex. App.—Fort Worth June 8, 2023, no pet.) (mem. op.) (emphasis added) (quoting *Knox Waste Serv., LLC v. Sherman*, No. 11-19-00407-CV, 2021 WL 4470876, at \*2 (Tex. App.—Eastland Sept. 30, 2021, no pet.) (mem. op.) (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) (internal quotations omitted)). In addition, the uncontested existence of the non-movant's signature on an arbitration agreement— as here with White's signature—meets the evidentiary standard necessary to prove the prima facie existence of an arbitration agreement. *See J.B. Hunt Transp., Inc.*, at \*4 (citing *APC Home Health Servs, Inc. v. Martinez*, 600 S.W.3d 381, 390 (Tex. App.—El Paso 2019, no pet.)). Consequently, we conclude relators met their burden to prove the prima facie existence of a valid arbitration agreement. *See id.*

### Arbitrability

Generally, after finding an agreement to be valid, a trial court considers the agreement's terms to determine which issues are arbitrable, unless the parties clearly and unmistakably provide otherwise. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008); *see also Henry Schein, Inc.*, 586 U.S. at 69 ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Prestonwood Tradition, LP v. Jennings*, 653

S.W.3d 436, 443 (Tex. App.—Dallas 2022, no pet.) (en banc).[9] It is well settled that parties can agree to arbitrate "gateway" questions of arbitrability. *See HomeAdvisor, Inc. v. Waddell*, No. 05-19-00669, 2020 WL 2988565, at \*5 (Tex. App.—Dallas June 4, 2020, no pet.) (mem. op.). "Gateway" issues include "*whether the parties have agreed to arbitrate* or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (emphasis added). Where the parties' contract clearly and unmistakably delegates the arbitrability question to the arbitrator, the court possesses "no power" to decide the arbitrability issue. *HomeAdvisor, Inc.*, 2020 WL 2988565, at \*5; *see also Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 532 (Tex. 2019).

The SPD's arbitration policy provides,

> **Arbitrator Authority:** The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement including, but not limited to, any claim that all or any part of this agreement is void or voidable.

> \* \* \*

> **Arbitration Procedures:** Any arbitration under this Policy will be administered by the American Arbitration Association ("AAA") under its then-current Employment Arbitration Rules and Mediation Procedures.

---

[9] *See also RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018) ("[T]here are three types of disagreements in the arbitration context: (1) the merits of the dispute; (2) whether the merits are arbitrable; and (3) who decides the second question. The default rule for the third question is that arbitrability is a threshold matter for the court to decide.").

Rule 1 of the AAA rules provides,

> The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

(Footnote omitted.)[10]

Rule 6(a) of the AAA rules provides,

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.[11]

The second court of appeals considered almost identical arbitration provisions and the AAA employment rules that are involved in this case. *See J.B. Hunt Transp., Inc.*, 2023 WL 3876758, at *5. The second court concluded,

> Here, the parties not only expressly referred to arbitrability pursuant to the AAA but also specifically delegated the scope issue to the arbitrator. Further, the AAA rules require the arbitrator to rule on any objections "with respect to the existence, scope or validity of the arbitration agreement." Am. Arb. Ass'n, *Employment Arbitration Rules & Mediation Procedures* Rule 6(a) (2023), http://adr.org/sites/default/files/EmploymentRules-Web.pdf.
> Therefore, similar to the *TotalEnergies* arbitration agreement, objections "with respect to the existence, scope or validity of the arbitration agreement" between J.B. Hunt and Lester were delegated

---

[10] Am. Arb. Ass'n, *Employment Arbitration Rules & Mediation Procedures*, 10 (2023), http://adr.org/sites/default/files/EmploymentRules-Web.pdf.

[11] *Id.* at 12.

> to the arbitrator. *TotalEnergies*, 2023 WL 2939648, at *3, *4, *10.
> We conclude that the parties here have "clearly and unmistakably"
> delegated the arbitrability issue to the arbitrator. *See id.* at *19.

*J.B. Hunt Transp., Inc.*, 2023 WL 3876758, at *6 (footnote omitted). The ninth court of appeals held likewise in a case involving the AAA employment arbitration rules. *See T.W. Odom Mgmt. Servs., LTD v. Williford*, No. 09-16-00095-CV, 2016 WL 4487883, at *4 (Tex. App.—Beaumont Aug. 25, 2016, no pet.) (mem. op.) (holding that arbitration agreement provisions, which also included incorporation of AAA employment arbitration rules, "clearly and unmistakably shows that T.W. Odom and Williford intended to delegate gateway issues relating to the interpretation, applicability or enforceability of the agreement to the arbitrator."). We find the reasoning of *J.B. Hunt Transport, Inc.* and *T.W. Odom Management Services, LTD* to be persuasive and convincing. Similarly, the supreme court and this Court have held that arbitration agreements incorporating AAA commercial rules clearly and unambiguously delegated arbitrability issues to the arbitrator. *See TotalEngergies E&P USA, Inc.*, 667 S.W.3d at 721 ("We hold that the parties clearly and unmistakably delegated to the AAA arbitrator the decision of whether the parties' controversy must be resolved by arbitration."); *Prestonwood Tradition, LP*, 653 S.W.3d at 443–44; *see also HomeAdvisor, Inc.*, 2020 WL 29988565, at *5.

Accordingly, we conclude as a matter of law that the arbitration agreement plainly and unmistakably delegated to the arbitrator "the power to rule on his or

her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *See J.B. Hunt Transp., Inc.*, 2023 WL 3876758, at *6; *see also TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 721; *Prestonwood Tradition, LP*, 653 S.W.3d at 443-44; *HomeAdvisor, Inc.*, 2020 WL 29988565, at *5-6. Therefore, the arbitration agreement clearly and unmistakably delegated to the arbitrator the issue of whether a valid arbitration agreement does not exist due to a lack of a meeting of the minds. *See Rent-A-Center, W., Inc.*, 561 U.S. at 68–69 ("The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as *whether the parties have agreed to arbitrate* or whether their agreement covers a particular controversy.") (emphasis added). The arbitration agreement also plainly and unmistakably delegated to the arbitrator objections concerning the "scope" of the agreement. *See J.B. Hunt Transp., Inc.*, 2023 WL 3876758, at *5–6 (concluding in opinion addressing arbitration and AAA provisions almost identical to those in this case, that the parties clearly and unmistakably delegated the issue of whether plaintiff's claims fell within the scope of the agreement).

Consequently, the trial court clearly abused its discretion by failing to grant relator's supplemental motion to reconsider and supplemental motion to stay and compel arbitration. *See Henry Schein, Inc.*, 586 U.S. at 69 ("[I]f a valid agreement

exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *HomeAdvisor, Inc*, 2020 WL 2988565, at *5 (where the parties' contract clearly and unmistakably delegates the arbitrability question to the arbitrator, the court possesses "no power" to decide the arbitrability issue) (citing *Robinson*, 590 S.W.3d at 532).

## No Adequate Remedy By Appeal

When a trial court erroneously fails to grant a party's motion to compel arbitration under the FAA, the movant has no adequate remedy by appeal. *See In re Advance PCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2005) (orig. proceeding) (per curiam) ("A party denied the right to arbitrate under the FAA is entitled to mandamus relief."); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding) ("When a trial court erroneously denies a party's motion to compel arbitration under the FAA, the movant has no adequate remedy at law and is entitled to a writ of mandamus."). Consequently, we conclude relators have no adequate remedy at law and are entitled to conditional mandamus relief.

## Conclusion

We conditionally grant relators mandamus relief. We order the trial court to vacate its July 8, 2022 order (1) denying relators' motion to stay litigation and to compel arbitration and (2) granting White's motion for jury trial on whether a valid arbitration agreement exists. We order the trial court to vacate its November 2,

2023 order denying relators' motion to reconsider and supplemental motion to stay and compel arbitration. We order the trial court to grant relators' supplemental motion to reconsider and supplemental motion to stay and compel arbitration. We lift this Court's stay of trial court proceedings for the limited purpose of the trial court's compliance with our orders herein. We are confident the trial court will comply with our orders within thirty days of the date of this opinion, and a writ of mandamus shall issue only on the trial court's failure to comply with these orders within that time.

231246f.p05

Nowell, J., dissents without opinion.

/Bill Pedersen, III/
_____
BILL PEDERSEN, III
JUSTICE